MORONEY et al. v. MORONEY. (No. 673–4566.)

(Commission of Appeals of Texas, Section B. June 23, 1926.)

**1. Guardian and ward ⬸37—Guardian of estate held without authority to administer affairs of corporation in which estate owned all shares 'but one.**

Guardian of estate, as such, *held* without authority to administer affairs of corporation as such in which estate owned all shares but one, since corporation and estate were separate entities.

**2. Appeal and error ⬸854(2).**

Trial court's correct judgment should not be reversed because based on erroneous reasoning.

**3. Guardian and ward ⬸37.**

Guardian must preserve estate of wards and do nothing affirmatively that would lessen or impair it, except as authorized by order of court.

**4. Guardian and ward ⬸137.**

The law will require strict accounting by guardian, especially where his interests conflict with those of wards.

**5. Corporations ⬸182.**

Shareholder of corporation is not legal owner of its property, even though he holds all of stock.

**6. Corporations ⬸182.**

Funds of corporation, segregated and dedicated to stockholders, belong to stockholders individually, regardless of whether dividend has been declared.

**7. Guardian and ward ⬸147—Guardian of estate which owned all shares but one of corporation held liable to wards for payment which he received from corporation, which was, in effect, a dividend.**

Guardian of estate which owned all shares but one of corporation *held* liable to wards for

payment which he received from corporation, which was in effect dividend, regardless of whether corporation had cause of action to recover back such funds against him.

**8. Evidence ☞73.**

Corporation will be presumed to have intended to do lawful thing in paying money to guardian of estate which owned all its shares but one.

**9. Guardian and ward ☞150—Guardian of estate which owned all shares but one of corporation held liable to wards for funds drawn to compensate himself for services as president, where such payment was unauthorized.**

Guardian of estate which owned all shares but one of corporation *held* liable to wards for funds drawn from corporation to compensate himself for services as president, where there was no pretense of allowance of payment by corporation for that purpose and such action prejudiced rights of wards.

**10. Guardian and ward ☞65.**

Guardian is liable for any direct loss sustained by wards through his negligence or overt acts of mismanagement.

**11. Guardian and ward ☞151.**

For good reason courts may refuse to allow statutory commission to guardians, but much is left to discretion of trial court to determine whether facts justify such punishment.

**12. Guardian and ward ☞151.**

Guardian *held* entitled to commission notwithstanding he failed to account to wards for payments from corporation, where his motive was not such as to show turpitude or bad faith.

**13. Guardian and ward ☞147—Guardian held required to pay rent on homestead occupied by himself and family during administration of estate (Const. art. 16, § 52; Rev. St. 1925, art. 3496).**

Guardian *held* required to pay rent on homestead occupied by himself and family during administration of estate, where probate court's order which was only authority for occupancy required it, in view of Const. art. 16, § 52; Rev. St. 1925, art. 3496.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Bill of review by J. M. Moroney and another to set aside an order of the county court, approving guardian's reports of W. J. Moroney. Appeal was taken from the judgment in the county court to the district court. Judgment of the district court was reformed and affirmed by the Court of Civil Appeals (280 S. W. 254), and plaintiffs bring error. Reformed and affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiffs in error.

Lawther, Pope, Leachman & Lawther, of Dallas, for defendant in error.

SPEER, J. On November 30, 1910, W. J. Moroney was duly appointed guardian of the persons and estates of James M. Moroney and Thomas J. Moroney, minors, and he duly executed his bond and assumed the duties of such guardian. The guardian was a brother of the deceased father of the minors, and the estate owned by the minors was very considerable, and amongst other things consisted of considerable stock in corporations, including the Moroney Hardware Company, in which company the estate owned outright 459 of the 500 shares constituting the capital stock, and also held a note for the purchase price of 40 shares, together with a pledge of the stock, directing all profits and dividends to be applied thereon. So that, so far as profits and dividends of the business were concerned, the estate owned all the stock but one share, and this was owned by the guardian. The par value of the stock was $100, but in the inventory it was appraised at $300 per share. The guardian's bond was for the sum of $800,000. The guardian filed his first annual account April 2, 1912, showing a balance to the credit of the estate of $634.63. This report was approved by the county court July 30, 1912, but thereafter the order was modified to the extent of charging the guardian with the bond premium of $500 for making bond. On January 10, 1914, the guardian filed his second annual account, showing a debit of the estate to the guardian of $2,480.24. On May 29, 1914, the county court entered an order approving this second annual account. On April 26, 1915, the guardian filed his resignation, and on October 6, 1915, filed his confirmation of resignation and his account for final settlement. On April 14, 1915, James Moroney had his disabilities of minority removed by judgment of the district court, and thereupon was appointed and qualified as guardian of the person and estate of Thomas J. Moroney, his brother, and then for himself and as guardian and next friend of Thomas J. Moroney, he filed in the county court bills of review to set aside the orders of the county court approving the guardian's first, second, and final reports, and trials were had on each report separately. The county court charged the guardian upon each report, and the causes were duly appealed to the district court, where the proceedings were consolidated and an auditor appointed to audit the accounts. On February 15, 1921, the auditor filed his report, all parties filed amended pleadings, and the case was tried before the court without a jury, and on December 29, 1922, the court entered judgment against the guardian for $35,013.12, together with 6 per cent. interest from January 1, 1916, amounting in the aggregate to $49,684.07, with interest at 6 per cent. from date of judgment. The guardian duly appealed, and the wards perfected a writ of error, to the Court of Civil Appeals, where the judgment of the district court was reformed in certain particulars, and, as reformed, was affirmed. 280 S. W. 254. The

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

writ of error to the Court of Civil Appeals was granted upon the application of J. M. Moroney, and T. J. Moroney, the guardian having made no complaint of the judgment of the Court of Civil Appeals.

[1] The most important question presented for decision arises upon the contention that the Court of Civil Appeals erred in sustaining the guardian's first, second, and seventh assignments of error, challenging the judgment against him for the items of $17,000 paid by the Moroney Hardware Company to W. J. Moroney personally, and of .$940 for merchandise charged by the hardware company to W. J. Moroney personally, during the period of the guardianship. These charges by the district court were disapproved by the Court of Civil Appeals upon the reasoning that since the Moroney Hardware Company, being a corporation, is a separate entity from the estate, any wrongdoing or liability whatsoever of the guardian with respect ·to his dealings with the corporation appertained to the corporation itself and could not be considered in an accounting between him and the estate. There can be no doubt of the correctness of the statement that the corporation and the estate were separate legal entities, and there is no doubt, further, that the guardian of the estate, as such, did not have, and could not have, any authority to administer the affairs of the corporation as such. But it does not follow by any means that defendant in error is not liable in this accounting if his conduct has amounted to a breach of his duty as guardián of the estate, resulting in a loss to his wards. ·

Amongst other things, the trial court made the following finding:

"Fifth. The wards owned in their own right 459 shares of the stock of said company (Moroney Hardware Company) out of a total of 500 shares, and held and owned as collateral 40 additional shares, which were afterwards surrendered to them by the purchasers thereof in cancellation of their indebtedness therefor, making a total owned by the said wards of 499 shares. The remaining 1 share was owned by the guardian. I find said mercantile business was a part of the estate of said wards.

"Sixth. The business of the hardware company and the assets of the wards in toto were treated throughout the guardianship as a single entity or unit. The guardian applied to the county court and received authority to vote all shares of stock inherited by the wards in ·all corporations in which their deceased father held shares, being four or five companies other than the hardware company. Thereupon the guardian had himself elected as president of the hardware company, and under, and by virtue of the authority thus vested in him, the hardware company was directed to and did pay upon the guardian's orders, large sums of money which he appropriated in part for the use of the estate, and in part for his own personal benefit."

The two items of $17,000 and $940, respectively, under consideration, were found by the trial court to be proper charges against the guardian. The reasons which apparently prompted the trial court to charge the items are not to be sustained. He proceeded upon the theory that the assets of the corporation constituted a part of the estate of the minors, and said:

"But if the hardware company be treated as a separate entity, then the checks to W. J. Moroney personally by the Moroney Hardware Company aggregating $17,000 and the merchandise amounting to $940 are not chargeable in the guardianship account."

[2] But if his judgment was right, it should not be reversed because based upon erroneous reasoning.

[3, 4] We need not state, much less to elaborate, the duties assumed by, and the liabilities imposed upon, the guardian, upon his appointment. The least that can be said is that it was his legal duty at all times to preserve the estate of his wards, and especially to do nothing affirmatively that would lessen or impair that estate except as he was duly authorized by order of court, or permitted by statutes of the state. His relation to the estate in one of great trust, and the law will require a strict accounting of the administration of that trust, especially where the interests of the guardian personally conflict with those of his wards.

[5] Now, it is well settled that a shareholder in a corporation is in no sense the legal owner of the property of the corporation. The corporation is a legal entity, and the title to its assets is vested in the corporation. The stockholder does own, however, his shares, stock, or interest whatsoever in the corporation, and this carries with it certain legal rights, but they are not the rights of a legal owner of the corporation assets in whole or in part. This distinction holds good even though all the stock may be held by a single individual. It does not follow from this, however, that the rights of a stockholder in a corporation are not of judicial cognizance. Indeed, in every profitable corporate venture, the rights of the stockholder are of great importance, and at all times will be properly protected, whether in a court of law or equity, according to the exigencies of the situation. The chief value of corporate stock is its right to receive dividends. So important is this right that courts of equity will, in a proper case, compel a payment of dividends. And where a stockholder is entitled to force payment of a dividend, the right does not arise from any actual contract between the corporation and its stockholders, but rather from the nature of the organization, and the relation of the stockholders to the corporation and its property. 7 R. C. L. p. 295, § 270.

[6, 7] Now, it is not essential to the right to receive a dividend that there should have been a formal declaration of a dividend, but where the corporation sets apart a fund for distribution to its stockholders to such ex-

tent as to become segregated from the prop-erty of the corporation, such property henceforth becomes, equitably, the stockholders' property. There has been in legal effect a declaration of a dividend, and of course if such fund is actually delivered to the stockholders, there has been a payment, and the fund is legally that of the stockholder. In other words, where there has been such a segregation of the corporate funds, and such a dedication to the stockholders, the assets thus segregated cease to belong to the corporation, but do belong to the stockholders individually. 14 C. J. p. 798, §§ 1207, 1208.

[8-10] As we view the transaction, the conduct of the hardware company in making the payments it did to the guardian in effect was paying a dividend to the stockholders. It must be presumed that it intended to do a lawful thing, and that the sums paid represented a legal liability of the corporation. While there was never at any time a formal declaration of dividends, yet that fact is easily understood when it is remembered the wards owned $^{409}\!/_{000}$ of the stock, and the guardian himself owned the only remaining share. Necessarily, under the circumstances, even before the wards became the owners of the 40 shares outstanding, they were entitled to the dividends and proceeds upon such block of stock, and therefore were practically the sole beneficiaries of the entire issue. The evidence indicates the corporation was a prosperous concern, and by common consent it pursued this method of distributing its proceeds to the rightful owners of such profits. The transaction evidences an intention to distribute the proceeds of the business to the rightful owners: There is no reason in law or justice why the distribution thus made should not be binding upon all parties. Treating these payments as having been made upon the guardian's orders, as found by the trial court, it of course follows the guardian came into possession of such funds as guardian, for it was on his order as guardian the corporation had made payments to him, and knowing, as he must necessarily have known, that the payments were in the nature of dividends to his wards, upon stock constituting a part of the estate being administered by him, his liability as guardian with respect to such property immediately attached to the fullest extent. If we are correct in this reasoning, we need go no further to fix liability upon the guardian. But if the question depended upon a decision of the further question urged by defendant in error, we would not be willing to hold that even though the guardian withdrew these funds from the corporation intending to compensate himself for his services as president of the corporation, there being no pretense of an allowance and payment by the corporation for that purpose, and the undisputed fact being that such depletion of the assets of the corporation necessarily prejudiced the

rights of his wards as stockholders, he would not be liable in this proceeding. We think he would. In its last analysis the situation is a very simple one. The guardian charged by law with the duty faithfully to administer the estate of his wards is liable in this proceeding for any direct loss they have sustained through his negligence or overt act of mismanagement. Without dispute, his conduct has resulted in a loss to the estate. The loss is sufficiently direct as to be traceable to the conduct of the guardian. It can make no difference whether the corporation, Moroney Hardware Company, does or does not have a cause of action against him. The estate recovers in this case upon the merits of its own claim. It has sustained a direct loss and should have the relief which it seeks.

The law is not so circumscribed by forms as defendant in error argues. Even though the Moroney Hardware Company has a cause of action against W. J. Moroney for the money and merchandise wrongfully appropriated by him—a point we do not decide—yet where such conduct on his part necessarily resulted in the loss, to that extent, of dividends to the estate of which he was guardian, his act was a breach of his duty, a violation of the trust for which he should be held officially liable. We say necessarily resulted in loss, because it appears without doubt the Moroney Hardware Company was a prosperous and profitable concern, and there is no question but these sums, if not actually paid for the estate, would have gone to the estate but for the conduct of the guardian. It is not so much an action by the wards to recover damages to their stock, as it is to recover a loss of specific profits they would have earned but for the guardian's default.

But it is doubtful if the Moroney Hardware Company could in any event have a cause of action against W. J. Moroney, since it appears from the court's findings such payments were made upon the guardian's orders. Having voluntarily, even if irregularly, paid to the order of one entitled to receive it, by what right could the company recover the sums paid? But we base our recommendation upon the ground first stated.

[11, 12] Plaintiffs in error's second assignment challenges the action of the Court of Civil Appeals in allowing the guardian his commissions prescribed by law. We find no fault with the decision in this respect. It is a wholesome rule interpreted into the statute that for good reason the courts may refuse to allow the statutory commissions, but in the nature of things, there is much left to the discretion of the trial court in determining whether or not the facts justify such punishment, for the withholding of commissions is only a punishment to the wrongdoer. The trial court and the Court of Civil Appeals have held that the facts in this case

were not such as in equity to require the infliction of the penalty of a loss of commissions. It cannot be said as matter of law the commissions should be withheld in this case. Defendant in error was wrong in his contention of a right to withhold the sums we have just adjudicated against him, but it cannot be said his motives in making such claim were necessarily such as to show turpitude or bad faith.

[13] The last assignment of error presents the action of the Court of Civil Appeals in refusing to charge the guardian for rent of the homestead while occupied by himself and family in connection with the wards during the administration.

Section 52, article 16, of the Constitution of Texas, provides:

"On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the life time of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same."

This article is in substance re-enacted in the statutes. R. C. S. 1925, art. 3496.

It is apparent the homestead is exempted from partition amongst the owners only so long as the guardian of the minor children of the deceased may be permitted under the order of the proper court to use and occupy the same. We take it to be the statute refers only to the guardian of the person of the minor children. It is clear the occupancy by the guardian is only to be authorized by an order of the proper court having jurisdiction. This is a wise provision. It is very elastic and should be elastic. Circumstances vary so much that no fixed rule can justly be established by statute. The necessities of the individual case will control the discretion to be exercised in the order. In this case the county court, being the "proper court having jurisdiction," on August 24, 1912, made the following order:

"It is ordered by the court that the order made on July 30, 1912, approving the first annual account of the guardian be and the same is reformed to the extent that the guardian is charged with the bond premium of $500 for making his bond, and also $50 per month rent for the time he has occupied and will occupy the home of the wards."

It does not appear that this order was ever in any wise appealed from or vacated. It does appear that the guardian, together with his family, occupied the homestead of his wards during the entire administration. It also appears that the property was repaired and materially improved for his occupancy, and that its reasonable rental value was $1,600 per year; at least, there was testimony to that effect. Defendant in error's family, which was a large one, occupied this homestead continuously, while in truth the wards were away from home the greater part of the time attending school. We think the order of the probate court constituted the only authority for the guardian's occupancy of the property, and that by its terms it fixes the liability of the guardian at $50 per month, which should be charged in the accounting. This covers the period from November 30, 1910, to October 6, 1915.

We therefore recommend that the judgments of both the trial court and the Court of Civil Appeals be reformed so that the judgment herein shall be as follows: To the judgment rendered by the district court on December 29, 1922, being in the sum of $35,013.12, together with 6 per cent. interest from January 1, 1916, there shall be added the sum of $2,771.60, with 6 per cent. interest on same from January 1, 1916, this being awarded by the Court of Civil Appeals, and there shall be further added the rents allowed by us, amounting to $2,900, together with interest at the rate of 6 per cent. per annum from January 1, 1916, being a total sum of $57,772.28, and said judgment shall bear interest at the rate of 6 per cent. per annum from and after its date, to wit, December 29, 1922, and as thus reformed the judgments should be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reformed and affirmed, as recommended by the Commission of Appeals.