SCHULTZ v. CARLSON. *

BARKWELL v. SAME.

1. Courts—Jurisdiction—Equity—Probate.

The rules which give chancery courts jurisdiction in matters of accounting as against courts of law are not applicable to probate courts as, generally, courts of equity will not interfere with the proceedings of courts of special and peculiar jurisdiction created for particular purposes or with special and peculiar powers.

2. Same—Priority and Exclusiveness of Jurisdiction of Probate Court.

Once a probate court assumes jurisdiction over the estate of a decedent it does not lose jurisdiction until the estate is closed

---

* See *Schultz* v. *Kent Probate Judge, ante,* 323.—Reporter.

and since its jurisdiction is exclusive, no other court, save an appellate one subsequently assuming to act in the matter, should proceed further when matter of priority of jurisdiction is raised.

3. Same—Equity—Probate—Adequacy of Remedy.

The chancery court should not exercise jurisdiction, when an adequate remedy exists in the probate court, after such probate court has assumed jurisdiction to act with reference to the subject matter (Act No. 288, chap. 1, § 19, Pub. Acts 1939, as amended by Act No. 26, Pub. Acts 1941).

4. Same—Jurisdiction—Equity—Probate—Specific Performance.

The circuit court in chancery had no jurisdiction over estate of nonresident being administered in probate court and could not compel administratrix to deliver deed to realty in the estate where it was sold subject to later confirmation that was never obtained (Act No. 288, chap. 1, § 19, Pub. Acts 1939, as amended by Act No. 26, Pub. Acts 1941; chap. 9, § 29).

5. Specific Performance—Burden of Proof.

A plaintiff seeking specific performance of a contract has the burden of proving all elements necessary to establish a contract.

6. Same—Contract with Administratrix—Approval by Probate Court—Consent of Sole Heir.

Acceptance by administratrix of estate of nonresident decedent of plaintiff's offer to buy estate's realty at stated price subject to confirmation by the probate court and her petition to sell, pursuant to such offer, with attached waiver of notice of hearing and consent to sale, signed by the sole heir, did not constitute an agreement enforceable in suit for specific performance, where waiver and consent were a part of statutory procedure to obtain license authorizing a sale of the property by the administratrix to any person desiring to purchase it, and probate judge could, within prescribed time, vacate his order to sell the property (Act No. 288, chap. 1, § 19, Pub. Acts 1939, as amended by Act No. 26, Pub. Acts 1941; chap. 9, § 29).

Appeals from Kent; Verdier (Leonard D.), J. Submitted October 3, 1945. (Docket Nos. 19, 20, Calendar Nos. 43,036, 43,037.) Decided January 7, 1946.

Separate bills by Arthur E. Schultz and John O. Barkwell against Marion I. Carlson and Edna Elliott, administratrix with will annexed of the estate of Otto Thum, deceased, for specific performance of a contract and injunction. Cases consolidated. Defendants appeal. Reversed and bills dismissed.

*Searl & White,* for plaintiff Schultz.

*Uhl, Bryant, Snow & Slawson,* for plaintiff Barkwell.

*Fuller, Sherk & Dilley,* for defendants.

SHARPE, J.   Arthur E. Schultz and John O. Barkwell brought separate suits for specific performance of agreements for the sale of separate parcels of real estate. Both cases involve the same defendants and the same issues. They were consolidated for trial and appeal.

Otto Thum, a resident of California, died testate November 10, 1943. His will was admitted to probate in California and his daughter, Marion I. Carlson, was appointed executrix of his estate in that State. The will provided, in part, as follows:

"First: I direct that all just claims and debts against my estate be paid.

"Second: Unto my beloved daughter, Marion I. Carlson, I do hereby give, bequeath and devise all of my estate, real and personal, of whatsoever nature and wheresoever located."

Deceased left an estate in Michigan which was appraised at $277,602.24 of which $239,300 was in real property and $38,302.24 was in personal property. The will was admitted to probate for ancillary administration in Michigan by the Kent county probate court and Edna Elliott was appointed admin-

istratrix *cum testamento annexo*. The claims allowed against the estate in Michigan totaled $185.60.

On June 26, 1944, plaintiff, Arthur E. Schultz, through a real estate broker, made a written offer to purchase from the Otto Thum estate lot 130 and the south 40 feet of lot 137 of Kent plat in the city of Grand Rapids for $21,000. On the same date the estate of Otto Thum, by Edna Elliott, administratrix, accepted the offer in the following terms: ''The above proposition is hereby accepted subject to approval and authority from Kent county probate court in the matter of the estate of Otto Thum, deceased.''

On June 30, 1944, Edna Elliott, as administratrix, filed a petition in probate court for license to sell at private sale the above property at the quoted price subject to the payment of a broker's commission. In the petition to sell, the administratrix states, ''that it is for the best interests of all persons interested in this estate that the above-described real estate be sold in lieu of disposing of the personal property in this estate, and that a sale pursuant to and on the said offer is approved and assented to by all persons interested in this estate.'' Attached to this petition was a waiver of notice of hearing on the petition, consent to the making of an order authorizing such sale and conveyance, and consent to an order confirming such sale executed by Marion I. Carlson, individually and as executrix in California of the estate.

After testimony had been taken, and on June 30, 1944, the probate judge made an order licensing the administratrix to sell at private sale the interest of the estate in the property to Arthur E. Schultz for $21,000 subject to the payment by the estate of a

broker's commission. A bond in the sum of $20,000 was executed and filed by the administratrix.

Subsequently, other offers, greater in price than the one submitted by plaintiff Schultz, were made to the administratrix for the purchase of this property. On September 5, 1944, the administratrix filed a petition in probate court showing that no sale had been made to plaintiff Schultz and praying that she be instructed by the court as to the several offers made for the property. On September 12, 1944, the probate court issued an order requiring Schultz to show cause why the license of June 30, 1944, should not be cancelled, vacated and set aside.

On September 11, 1944, plaintiff Schultz filed his bill of complaint against Marion I. Carlson, individually, and Edna Elliott, administratrix of the Otto Thum estate. After setting forth the above facts, plaintiff alleged that the offer and acceptance dated June 26, 1944, and the documents filed in the probate court relative to sale of this property to plaintiff "constitute a legal and binding agreement and a note and memorandum thereof in writing on the part of the defendant Marion I. Carlson, the sole owner of the legal title to said premises, to sell the same to the plaintiff upon the terms therein mentioned." He asked that Marion I. Carlson be decreed to specifically perform her part of the agreement; that Edna Elliott as administratrix be required to issue to plaintiff an administrator's deed; that the defendants be enjoined from selling or taking any proceedings in the probate court for the sale of the premises to any other person than plaintiff; and that title to said premises be secured to plaintiff free and clear of any lien or incumbrances. On September 14, 1944, an injunction was issued against the administratrix enjoining her as such "from taking any proceedings in the probate court

for the county of Kent or otherwise to sell, convey, or agree to sell said premises until the further order of this court in the premises."

On October 16, 1944, each defendant filed an answer and motion to dismiss the bill of complaint. On December 13, 1944, the trial court entered a decree holding that on November 10, 1943, defendant Marion I. Carlson became the owner of the legal title to the property in controversy; that defendants agreed to sell this property to plaintiff for the sum of $21,000 and ordered:

"3. That the said agreement be specifically performed and that the defendants Marion I. Carlson and Edna Elliott as administrator with the will annexed of the estate of Otto Thum, deceased, cause to be delivered to the clerk of this court a good and sufficient deed of conveyance of the land and premises hereinbefore described with proper revenue stamps affixed thereto thereby conveying to the plaintiff a marketable title to said land and premises, free and clear of all liens, including the Federal estate tax lien, and subject to the rights of tenants in possession which became vested prior to September 11, 1944.   *   *   *

"8. That the defendants, and each of them, and their several heirs, devisees, successors, assigns, agents and attorneys be and they are hereby enjoined and restrained from selling, offering to sell, or in any manner attempting to sell or otherwise disposing of or encumbering said premises, or any part thereof."

The other piece of property in controversy is known as lot 1 of Gilbert's Addition to the city of Grand Rapids. On July 18, 1944, plaintiff, John O. Barkwell, made a written offer to purchase this property for $4,500. On the same day the Thum estate by Edna Elliott, administratrix, accepted this offer in the following terms: "The above propo-

sition is hereby accepted subject to approval and authority from Kent county probate court in the matter of the estate of Otto Thum, deceased.'' On July 19, 1944, the probate court made and entered an order licensing the administratrix to sell the property for the sum of $4,500 less a broker's commission. The bond required on such sale was never filed. No administratrix's deed was given, nor was the sale confirmed.

Subsequently, a better offer was received for the purchase of the property. On September 8, 1944, the administratrix filed in probate court her report of the subsequent offer and petition for instructions and directions as respects the offer to be accepted for this property. On September 13, 1944, plaintiff, John O. Barkwell, filed his bill of complaint against defendants for specific performance of the alleged agreement to purchase the property. Defendants each filed an answer and motion to dismiss. On December 13, 1944, a decree was entered granting specific performance.

Defendants appeal in both cases. In reaching our conclusions we shall refer only to the *Schultz Case,* but our determination shall be binding upon the *Barkwell Case* as well.

On appeal defendants urge that Marion I. Carlson individually did not make a contract with Schultz to sell him the property; that the contract which Schultz made with Edna Elliott as administratrix is not subject to specific performance; and that the decree is void because the trial court has no jurisdiction over the administratrix or over the subject matter, and because the decree invades and ousts the lawful jurisdiction of the probate court.

Of first importance is the claim that the chancery court lacks jurisdiction in this case to enter a decree of specific performance against the administratrix.

We have in mind that plaintiff Schultz made an offer to purchase the property in question from the Otto Thum estate for $21,000; that subsequently other offers were made for the same property and deposits made in conformity with Act No. 288, chap. 9, § 29, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-9 [29], Stat. Ann. 1943 Rev. § 27.3178 [489]); and that no probate court order has been made confirming the sale.

Act No. 288, chap. 1, § 19, Pub. Acts 1939, as amended by Act No. 26, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 16289-1 [19], Stat. Ann. 1943 Rev. § 27.3178 [19], provides in part:

"Each judge of probate shall have jurisdiction:
"1. Of all matters relating to the settlement of the estates of all deceased persons, whether testate or intestate,   *   *   *   who shall die without the State leaving any estate within such county to be administered;   *   *   *
"5. And shall have and exercise all such other powers and jurisdiction as are or may be conferred by law;
"To that end he may, upon the filing in said court of a petition therein, within 3 months of the original hearing, or of the rendering or making of any order, sentence or decree, as the case may be, and after due notice to all parties interested, grant rehearings, and may modify and set aside orders, sentences and decrees rendered in such court: *Provided,* That the jurisdiction conferred by this section shall not be construed to deprive the circuit court in chancery in the proper county of concurrent jurisdiction as originally exercised over the same matter: *Provided further,* That the court shall make and enter an order with respect to the original hearing or rehearing of contested matters within 3 months after the termination of such hearing or rehearing."

In *Brooks* v. *Hargrave,* 179 Mich. 136, defendant was appointed and qualified as executor of the es-

tate of Edward J. Hargrave. He filed an inventory and appraisal of the property of the estate, but was delinquent in filing his account as executor. Plaintiffs as heirs at law of deceased filed a bill in chancery to compel the executor to give an accounting of the money and property received as such executor. We there said, pp. 144–146:

"It is well-established in this State that the probate court has exclusive jurisdiction of all matters relative to settlement of estates of deceased persons, except in cases where its remedies are inadequate. * * *

"The rules which give chancery courts jurisdiction in matters of accounting as against courts of law are not applicable to the probate courts. It has been laid down as a general rule that courts of equity will not interfere with the proceedings of courts of special and peculiar jurisdiction created for particular purposes or with special and peculiar powers. * * *

"There can be no question that the probate court assumed jurisdiction of the subject matter in controversy when the will was admitted to probate and the defendant qualified as executor. It does not lose jurisdiction until the estate is finally closed. Having assumed jurisdiction, it has exclusive jurisdiction and no other court, save an appellate one which subsequently assumes to act in the matter, should proceed further when the priority of jurisdiction is called to its attention."

In *Tipson* v. *Jeannot,* 204 Mich. 403, 408, the question involved was the right of a chancery court to construe a post-nuptial agreement entered into by deceased and her husband who later was appointed special administrator of her estate. We there said:

"In the recent case of *In re Butts' Estate,* 173 Mich. 504, Chief Justice STEERE, in reviewing the

question of the jurisdiction of the probate court, said the following:

" 'In view of the peculiarities and restrictions necessarily appertaining to the probate courts, the legislature, in the same section by which it conferred upon said court jurisdiction of all matters relating to settlement of estates, also provided:

" ' "That the jurisdiction hereby conferred shall not be construed to deprive the circuit court in chancery, in the proper county, of concurrent jurisdiction as originally exercised over the same matters." 1 Comp. Laws 1897, § 651.*

" 'Under our probate system, this section, in its entirety, has been construed to give the chancery court jurisdiction only where an adequate remedy does not exist in the probate court, and to declare that in 'such contingency the chancery court does have jurisdiction to exercise its inherent equity powers, amongst which, peculiarly within its province, are fraud, accident and mistake.' * * *

"The rule seems to be settled that the chancery court should not exercise jurisdiction, when an adequate remedy exists in the probate court, after such probate court has assumed jurisdiction to act with reference to the subject matter."

*In re Shadley's Estate,* 279 Mich. 156, deceased bequeathed to her husband $1,500. He filed a petition in the probate court that the executrix be directed to pay him the legacy and to cancel a receipt he had given the executrix for $1,500. The probate court entered an order that the executrix pay the legacy. The estate appealed to the circuit court. The trial judge held that the probate court had no jurisdiction to cancel the receipt or order payment of the legacy. Upon appeal to this court, we said:

* See Act No. 288, chap. 1, § 19, Pub. Acts 1939, as amended by Act No. 26, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 16289–1[19], Stat. Ann. 1943 Rev. § 27.3178[19]).—REPORTER.

"The probate court has jurisdiction 'of all matters relating to the settlement of the estate' of a deceased person. 3 Comp. Laws 1929, § 15519.* The determination of the force of the receipt was within its powers. *Tipson* v. *Jeannot,* 204 Mich. 403; *Brooks* v. *Hargrave,* 179 Mich. 136.

"Under 3 Comp. Laws 1929, §§ 15729–15730,† the probate court has jurisdiction to order partial distribution of an estate to the person entitled thereto after reservation of sufficient effects to pay the debts, expenses, charges and allowances provided by statute. It need not wait for a final account. *In re McNamara's Estate,* 167 Mich. 406. Neither statute nor decision makes an account by the executor a prerequisite to such order. Partial distribution depends upon the facts and the judgment and discretion of the court.

"The probate court had jurisdiction to hear Shadley's petition and grant relief."

When the decree was entered by the trial court in the case at bar, the Thum estate was in process of being administered in the probate court. It seems clear from the above authority that the circuit court in chancery had no jurisdiction over such estate, nor could it compel Edna Elliott as administratrix of said estate to deliver a good and sufficient deed of the land in question.

It is urged by plaintiff that Marion I. Carlson assented to the specific sale of the property in question to Schultz for $21,000; and that the receipt given by the administratrix of the estate, the petition to sell the real estate and the waiver of notice on hearing of said petition together with the consent

---

* See Act No. 288, chap. 1, § 19, Pub. Acts 1939, as amended by Act No. 26, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 16289–1[19], Stat. Ann. 1943 Rev. § 27.3178[19]).—REPORTER.

† See Act No. 288, chap. 2, §§ 96, 97, Pub. Acts 1939 (Comp. Laws Supp. 1940, §§ 16289–2[96], 16289–2[97], Stat. Ann. 1943 Rev. §§ 27.3178[166], 27.3178[167]).—REPORTER.

of Marion I. Carlson to an order authorizing such sale and conveyance constitute a sufficient "note or memorandum" of the agreement on the part of Marion I. Carlson to sell the property to Schultz.

In *Dodge* v. *Blood,* 307 Mich. 169, 175, we said:

"Plaintiff seeking specific performance of the contract has the burden of proving all the elements to establish a contract. It is elementary that 'a meeting of the minds upon all essential points is necessary to constitute a valid contract.' "

It seems inescapable that if there was such a contract as claimed by plaintiff it must be established by the record and files in the probate court.

Plaintiff, Arthur E. Schultz, testified:

"When exhibit 1 came back to me it was signed as it is now by the estate of Otto Thum, deceased, by Edna Elliott, administratrix. It had been typewritten in here under date of June 26, 1944, as follows: 'The above proposition is hereby accepted subject to approval and authority of the Kent county probate court in the matter of the estate of Otto Thum, deceased.' When Mr. Tichy brought exhibit 1 back to me I was satisfied with the acceptance that I had received upon my offer.

"*Q.* What did you understand it meant, that the proposition was accepted subject to approval and authority from the Kent county probate court in the matter of the estate of Otto Thum, deceased?

"*A.* Well, I understood that it was a probate court matter and that the deal would have to be confirmed by the court.

"I understood that the purchase would have to be made under the order of the probate court, and that the sale would have to be confirmed by the probate court in order to complete it.

"*Q.* When did you get a different understanding of it first?

"*A.* When did I get a different understanding?

"*Q.* Yes.

"*A.* I didn't know as I had a different understanding.

"*Q.* You never have changed your understanding with regard to that being necessary?

"*A.* No.

"*Q.* Is that right?

"*A.* That's right.

"I never had any dealings with Marion I. Carlson. I never saw the woman, to my knowledge.

"*Q.* Did you ever make an offer to her to purchase this property from her as an individual?

"*A.* I never did."

The receipt given by Edna Elliott as administratrix hereinbefore referred to is a conditional acceptance of plaintiff's offer. It was given subject to the approval of the probate court. The waiver and assent signed by Marion I. Carlson and attached to the petition to sell the real estate were a part of the statutory procedure to obtain license authorizing a sale of the property by the administratrix to any person who desired to make a purchase of the property. Moreover, the probate judge for cause shown could, within a prescribed time, vacate his order to sell the real estate. We do not consider such assent and waiver an agreement upon the part of Marion I. Carlson to sell the property to plaintiff. The actions of Marion I. Carlson in the premises were contingent and subject to the approval of the probate court.

The decrees are reversed and vacated. Plaintiffs' bills of complaint are dismissed, with costs of both courts to defendants.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, and NORTH, JJ., concurred. STARR, J., did not sit.