BOURNE *v.* MUSKEGON CIRCUIT JUDGE.

1. EXECUTORS AND ADMINISTRATORS—INCREASE OF BOND.

It is assumed that good reason existed for requiring an increase of bond on part of executors to quadruple amount originally required by probate court under threat of removal, where testator provided that they be not "required to give bond other than that absolutely required by law" and there is no transcript of any record in the probate court showing the reasons for such order.

2. JUDGMENT—RES JUDICATA—PROBATE COURT—ORDER REMOVING COEXECUTORS.

Order of probate court removing 2 of the 3 executors, nominated by deceased, for failure to file additional bonds as required by that court became *res judicata,* where no appeal was taken from such order.

3. EXECUTORS AND ADMINISTRATORS—REMOVAL OF SOME COEXECUTORS—PROTECTION OF ASSETS OF ESTATE.

The sole remaining executor has the duty to protect all assets of the estate upon the removal of coexecutors, until additional executors are appointed (CL 1948, § 704.51).

4. CORPORATIONS — DISSENSION AMONG DIRECTORS — POWERS AND DUTIES—VOTING.

Dissension among directors of corporation, as alleged in petition by a majority of them for its dissolution, if present, did not divest them of their powers and duties, nor deprive them of their majority position in any vote.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur, Executors and Administrators, §§ 135, 717.
[1] Power or discretion of court, after bond of executor, administrator, or testamentary trustee has been given, to dispense with, discontinue, or modify bond.   121 ALR 951.
[2] 21 Am Jur, Executors and Administrators, § 152; 30 Am Jur, Judgments, §§ 197, 217, 218.
[5–9] 13 Am Jur, Corporations, §§ 948, 949, 952, 960.
[11] 13 Am Jur, Corporations, § 6.
[12] 13 Am Jur, Corporations, § 956; 39 Am Jur, Parties, § 55 *et seq.*
[15] 42 Am Jur, Prohibition, §§ 8–10.
[15] Comment Note:— Writ of prohibition.   77 ALR 245.

5. SAME—DISSOLUTION—PETITION—MEETING OF DIRECTORS.

Petition for dissolution of corporation, filed by a majority of its directors, was fatally defective in that it failed to show any basis for its filing without there first being a directors' meeting called for the express purpose of filing such a petition (CL 1948, §§ 450.13 [4c], 450.39, 640.1).

6. SAME—STATUTES—IN PARI MATERIA.

Statutes relative to contents of notices of special meetings of directors of a corporation, the filing of a petition for dissolution of the corporation, and the quorum of the board necessary to do business are *in pari materia* (CL 1948, §§ 450.-13 [4c], 450.39, 640.1).

7. SAME—TRANSACTION OF BUSINESS—DISSOLUTION.

The dissolution of a corporation is as much a transaction of corporate business as those more ordinary transactions which will be thereby affected and of vastly greater moment.

8. SAME—DISSOLUTION—SPECIAL MEETING—NOTICE TO DIRECTORS.

If the matter of dissolution of a corporation be considered at a special meeting of the directors, it required proper notice stating the purpose of that meeting (CL 1948, §§ 450.13 [4c], 450.39, 640.1).

9. SAME—DISSOLUTION—DISMISSAL OF PETITION—NOTICE—RESOLUTION—RECEIVERS.

Motion to dismiss petition for dissolution of corporation was improperly denied where there was no dire emergency requiring individual action, corporation was solvent, there was a substantial net income, the sole stockholder who was one of the directors was not notified that dissolution was to be discussed at a special meeting and petition for dissolution and appointment of temporary receiver was filed without a resolution by the directors having been made, 2 of the 4 directors were employed by receiver at total salaries of $14,300 a year and petition appears to have been an attempt of such directors, who were not stockholders, to place themselves and continue in lucrative positions by means of dissolution-receivership proceedings (CL 1948, §§ 450.13 [4c], 450.39, 640.1).

10. SAME — ESTATE OF STOCKHOLDERS — JURISDICTION OF PROBATE COURT.

Fact that an estate was the sole stockholder of a corporation and was being administered in the probate court of one county did not give that court jurisdiction over the assets

and control over the management of the corporation located in another county since the corporate property is vested in the corporation itself and not in the stockholders.

11. SAME—SEPARATE ENTITY.

The corporate entity is distinct although all its stock is owned by a single individual or corporation.

12. SAME—INTERVENTION.

Intervention in proceedings for dissolution of corporation was properly granted to widow and guardians of minor grandchildren of deceased holder of entire stock of corporation in order to protect their interests.

13. SAME—DISSOLUTION PROCEEDINGS—MOTION TO DISMISS—COSTS—FEES.

Plaintiffs' motion for leave merely to dismiss circuit court proceedings for dissolution of a corporation to be followed by dismissal of prohibition and mandamus proceedings in Supreme Court directed toward proceedings in the circuit court, being discretionary, is denied, where unaccompanied by offer to pay costs and as dismissed by Supreme Court may prevent future litigation in that temporary receiver is not entitled to fees for actions he or his attorneys or appointees may have taken after issuance of restraining order by Supreme Court.

14. SAME—DISSOLUTION—COSTS—DIRECTORS.

Costs both in circuit court and Supreme Court are ordered taxed against 4 directors, a majority of the board of their corporation, who improperly sought dissolution of corporation and caused remaining director who was the sole remaining executor of estate owning the entire stock of the corporation to seek writs of prohibition and mandamus in the Supreme Court, but since they acted in a representative capacity, such costs are ordered to be a charge against the corporate assets.

15. PROHIBITION—APPEAL AND ERROR—MANDAMUS—IMPROPER CORPORATE DISSOLUTION PROCEEDINGS.

Writ to prohibit circuit judge from exercising jurisdiction in improper corporate dissolution proceedings is denied, where some relief is granted on delayed appeal from various orders of circuit court incident to such proceedings and writ of mandamus is issued to compel circuit judge to dismiss proceedings in circuit court and for the turning over of corporate assets, records, and papers to the new directors of the corporation.

Petition by North J. Bourne, executor of the estate of Charles A. L. McIntosh, for writ prohibiting Muskegon Circuit Judge from exercising jurisdiction in dissolution proceedings of Hardy Estates, Inc., a Michigan corporation, and for writ of mandamus directing him to vacate official action in connection with such dissolution. Legatees of Charles A. L. McIntosh, deceased, intervene. Submitted November 15, 1949. (Calendar No. 44,561.) Writ of prohibition denied and writ of mandamus granted March 1, 1950.

*Alex J. Groesbeck* (*Goddard, McClintock & Johnson* and *DeWitt H. Merriam,* of counsel), for plaintiff.

*Matthew C. Locke,* for defendant.

*George A. Parmenter,* for receiver of Hardy Estates, Inc.

*Butterfield, Amberg, Law & Buchen,* for intervenor William E. Davis, guardian of the estates of Catherine Lee Davis and Carol Anne Davis.

*James H. Wilcox,* for intervenors Charles Lorne Fisk McIntosh and Alfred C. Pollock, Jr., guardian of the estate of Charles Pollock.

*Noble T. Lawson,* for intervenor Catherine F. McIntosh.

BUTZEL, J. North J. Bourne, a director of the Hardy Estates, Inc., and executor of the estate owning all the stock in that corporation, petitioned this Court for a writ of prohibition to prohibit and re-

strain the Honorable Joseph E. Sanford, Judge of the circuit court for the county of Muskegon, from taking any further action in certain proceedings brought for voluntary dissolution and receivership of the corporation, and from exercising any jurisdiction in that suit until further order of this Court. He further asked that a writ of mandamus issue directing Judge Sanford to enter an order vacating all his official actions in the proceedings and directing the return of the corporate books and papers. He also asked that the directors who had signed the dissolution petition and Henry L. Beers, the temporary receiver appointed, be restrained from prosecuting or taking any further action herein. On September 1, 1949, we issued an order deferring action in the dissolution proceedings until our further order, but without prejudice to petitioner's filing motions in the circuit court for substitution as party plaintiff or for dismissal of said proceedings. We further ordered the temporary receiver to refrain from taking any action until the further order of the court.

On September 13, 1949, we issued a further order after the filing of a supplemental petition, directing the circuit judge and Henry L. Beers to show cause why a peremptory writ of mandamus should not issue vacating all orders in the dissolution proceedings and directing return of all assets, books and papers belonging to the Hardy Estates, Inc., and we further restrained the circuit judge and Henry L. Beers, as temporary receiver, and the 4 parties who, as directors, signed the petition for dissolution, from taking any further action or in any manner prosecuting or attempting to prosecute any action or proceedings against the aforesaid Hardy Estates, Inc., or in regard to the property thereof or management

of its affairs or its dissolution until the further order of this Court.

Hardy Estates, Inc., is a Michigan corporation organized in 1939 with a capital stock of the nominal value of $1,000. The corporation owns the entire capital stock of $100,000 of the Hardy Development Company, which became the owner of real estate in Muskegon, Michigan, on which it had erected a store building at a cost of over $450,000 and leased it to Sears Roebuck & Company for a term of 25 years on a $2\frac{1}{2}$ per cent. gross sales basis with a minimum income rental guarantee of $25,000 a year. The Hardy Estates, Inc., also holds all of the capital stock of another corporation known as the Muskegon Real Estate Corporation, which had owned a large department store in Muskegon until December, 1947, when it sold the business and leased its property to Herpolsheimer & Company for a long term of years on a rental of 3 per cent. on its gross sales business and also with a minimum guarantee.

Charles A. L. McIntosh, the owner of all of the capital stock of Hardy Estates, Inc., died on November 24, 1948. In his will he named as his executors Charles Lorne Fisk McIntosh, his son, Richard H. Reed and North J. Bourne. The latter, as sole executor, is plaintiff and petitioner in the present proceedings. The will was admitted to probate by the probate court for the county of Wayne and letters testamentary were issued to the 3 executors nominated in the will. In addition to other provisions, the will creates a trust of the residue, principally consisting of the entire capital stock of the Hardy Estates, Inc., and all of which is bequeathed to the executors and trustees named. The trust provides for the payment of monthly sums to testator's wife, Catherine F. McIntosh, and to each of his granddaughters, Catherine Lee Davis and Carol Anne Davis, and also to a grandson for a certain num-

ber of years. At the end of this period, and subject
to certain contingencies, the 2 granddaughters are
to receive the corpus of the trust. It further pro-
vides that testator's son Charles Lorne Fisk Mc-
Intosh shall receive a sum equal to 20 per cent. of
the annual net income of the trust estate, the income
to be computed before payment of income, inheri-
tance or Federal estate taxes, such sum also to be
compensation for his services as one of the execu-
tors and trustees of the estate. It also provides for
the payment of $100 per month to North J. Bourne.

Several specific provisions of the will are signifi-
cant. One creates a "spendthrift trust" as to each
*cestui que trust.* Another directs that the *executors*
and *trustees,* Charles Lorne Fisk McIntosh, North
J. Bourne and Richard H. Reed and their successors,
shall be members of the board of directors of the
corporation comprising the Hardy interests. In
nominating and appointing the executors and trus-
tees, the will directs that they shall not give bond
other than that absolutely provided by law, but it
does not request that they be excused from giving
more than a mere nominal bond. It further pro-
vides that:

"I hereby direct that my son, Charles Lorne Fisk
McIntosh, one of the executors and trustees, shall
assume and take active charge of the management,
control and care of said trust; no expenditures of
funds to the beneficiaries, other than the specific
amounts provided, shall be made without the unani-
mous approval and consent of all the trustees. In
the event that my son Charles Lorne Fisk McIntosh
is incompetent or unable to carry on his duties as
one of the executors or trustees, he shall be removed
during the period of such incompetence and the re-
maining trustees shall appoint a successor to be
approved by the probate court to act during such
period."

This clause indicates that the testator may have feared or anticipated some of the difficulties that thereafter arose. The will was admitted to probate and each of the 3 executors so nominated was appointed by the probate court for the county of Wayne on January 10, 1949, and filed a bond of $50,000 as directed by the probate court.

On June 16, 1949, a little more than 5 months following the appointment of the executors, the probate court entered an order requiring such executors to give an additional bond in the sum of $150,000 or be removed. While charges reflecting on the actions of Charles L. F. McIntosh, as executor, were made in the oral argument to this Court and the petition herein sets forth that in the probate proceedings Charles L. F. McIntosh and Richard H. Reed were charged with mismanagement of the estate and the illegal expenditure of its funds, there is no transcript of the record in the probate court showing the reasons for this order. We are, however, not unmindful of the fact that when the will of decedent expressly provided that the executors and trustees be not "required to give bond other than that absolutely required by law," and when the probate judge found it necessary to order an additional bond of $150,000, or otherwise they would be removed, there must have been good reason for his action. Bourne filed such additional bond but Charles L. F. McIntosh and Richard H. Reed did not, and on July 26, 1949, an order was entered in the probate court removing McIntosh and Reed as executors and ordering them to render to the court their final account within 10 days after the service upon them of a copy of the order. The record shows no appeal from this order. It became *res judicata.*

Upon the removal of Charles L. F. McIntosh and Richard H. Reed as executors of the estate by formal order of the probate court dated July 26, 1949, North

J. Bourne became the sole executor and in that capacity held all of the capital stock in Hardy Estates, Inc. (CL 1948, § 704.51 [Stat Ann 1949 Cum Supp § 27.3178 (302)]), until additional executors were appointed. It became the duty of the sole remaining executor at all times to protect the integrity of the corporation as well as all other assets of the estate.

On July 25, 1949, the board of directors of Hardy Estates, Inc., consisted of Charles L. F. McIntosh, Richard H. Reed, North J. Bourne, Frank C. Whitney, and M. C. Locke. McIntosh, Bourne, Whitney and Reed were at the time president, vice-president, secretary and treasurer, respectively, of the corporation, and also of its wholly-owned subsidiaries. Mr. Locke was the attorney for the petitioning directors in the dissolution proceedings under attack and appears as attorney for Judge Sanford in the prohibition-mandamus proceedings.

On July 23, 1949, a telegram was sent to Mr. Bourne by the secretary of Hardy Estates, Inc., informing him that a special meeting of the directors would be held on July 25, 1949, for the purpose of discussing and analyzing financial and legal problems which faced the corporation and for the purpose of authorizing, without premeditation, any action which might be necessary for the solution of such financial and legal problems as decided upon at that meeting. Mr. Bourne immediately replied that such a meeting would be an attempt to tie up the affairs of the estate for the benefit of outside parties, in direct violation of the representation that had been made to the probate court and that he would present the matter to the court. He did not attend the meeting. It is very significant that the notice was devoid of any mention of any dissolution or receivership proceedings. And of further importance is the meeting date which was just one day

prior to the formal order of the removal of the 2 executors, because of their failure to comply with the probate court's order of June 16, 1949, to file an additional bond within the specified time.

On the 8th day of August, 1949, just 13 days after a formal order removing the 2 executors was made, thereby constituting Bourne in his capacity as remaining executor, the sole stockholder of Hardy Estates, Inc., a petition for dissolution of the corporation and the appointment of a temporary and permanent receiver was filed in the circuit court for the county of Muskegon by McIntosh, Reed, Whitney, and Locke. It stated that the petitioners, a majority of the board of directors of the corporation, deemed it beneficial to the stockholders and creditors that it be dissolved. It alleged that the corporation had insufficient working capital to meet its obligations as they matured; that it was imminently threatened with suits, levies and foreclosures; that one of its more substantial assets was its good will based upon operations for over 30 years, which good will would be lost unless an orderly liquidation followed; that a dispute had arisen between the executors of the estate of Charles A. L. McIntosh and the heirs of that estate; that the executor (Bourne) claimed and assumed managerial powers over the corporation contrary to the wishes of the majority of the board of directors and was trying to remove the assets from the jurisdiction of the court; that on this account the active management had totally ceased to function and the corporation had been placed in a position where it could not and did not meet its pressing current obligations, and was not in any manner proceeding with its normal functions, duties and obligations, all of which was to the detriment of the beneficial stockholders and creditors. The petition further stated that although the petitioners believed the corporation presently solvent,

the continuation of the above conditions threatened its solvency and endangered the rights of creditors, for which reasons it was necessary to appoint a receiver, including a temporary receiver pending a hearing on the petition.

A mere glance at the petition and the schedules thereto attached shows how futile it would be to attempt to preserve the good will of the corporation as stated in the petition by having a receiver appointed. It is apparent that it would be difficult to devise a more effective way to destroy the good will of such a holding company. There is no reason shown why the directors could not have continued to manage the business affairs if they were true to their trust. The dissension complained of, if it did exist, certainly did not divest them of their powers or duties nor did it deprive the petitioning directors of their majority position in any vote. With the exception of the settlement of the claim for Federal taxes, the affairs of the corporation seemed to be quite simple to manage.

In the petition it was stated that the directors deemed it beneficial to the stockholders of the corporation that it be dissolved. None of the signers of the petition were stockholders at the time. Mr. Bourne, the sole executor and stockholder, was given no notice of the filing of the petition or the *ex parte* proceeding by which a temporary receiver was appointed contemporaneously with the filing of the petition.

Notwithstanding the allegations in the petition, the schedules attached thereto show that the corporation had assets far in excess of its liabilities. While it makes some general charges, the petition does not disclose the name of a single creditor who had brought suit or was pressing an obligation. It does show encumbrances against the properties, consisting of 2 mortgages amounting to $623,393.45, evi-

dently well secured. There also is a note of $120,000 plus interest payable to the Hackley Union National Bank but this is secured by collateral consisting of very high grade stocks set forth with their value in the schedule. The record does not show how the value of these stocks in the schedule was arrived at, nor that their value is much higher than stated in the schedule. However, this is a matter of proof. Suffice it to say that there is no indication, either direct or indirect, that the mortgagees or the bank holding the collateral had made any threat of foreclosure.

The schedule shows only 3 large unsecured debts. There is a sum of $32,716.52 due the estate of Charles A. L. McIntosh. Mr. Bourne, as sole executor, is not making any threats. Catherine F. McIntosh, widow of the decedent, is listed as a creditor to whom $35,000 is due. There is no showing that she is threatening any action. The largest claim is that of the United States government for taxes for previous years. The schedule states that the government claims $155,516.82, and a petition filed in this Court by the temporary receiver states that a settlement is being considered for appreciably less. The aggregate miscellaneous debts total only $12,426.14. Inasmuch as the record elsewhere states that the income from the property rented to Sears Roebuck & Company alone was over $83,000 in the first year, the necessity for a receivership seems nonexistent.

The estimate of cash receipts and disbursements of the corporation filed on August 16, 1949, for the fiscal year commencing August 1st, shows the contemplated net annual salary of Charles L. F. McIntosh at $10,400; that of William Davis at $5,200; and that of Reed at $3,900. It further estimates the legal fees in the tax court at $6,000; the legal fees to a certain law firm at $8,000; the estimated cost of litigation at $50,000. It is possible that the esti-

mated cost of litigation relates to the tax court case, but no express provision for costs in the instant case is made unless the $50,000 is for that purpose. The result of this case as shown by the opinion should keep the cost of the litigation in the instant case at a minimum. The estimated excess of receipts over disbursements for the year is placed at $101,779.61 after applying the proceeds of a larger mortgage loan.

It does not take much perspicacity to see that the dissolution proceedings were but a strategy to emasculate the power of the sole stockholder by throwing the corporation into the hands of a receiver and to further enable the former executors to manage the corporation notwithstanding their removal. The temporary receiver was appointed almost simultaneously with the filing of the petition. On August 16, 1949, the day after the shareholders' meeting at which the directors were removed, the facts of which are more completely related later in the opinion, Judge Sanford entered an order authorizing the receiver to vote all the shares of stock owned by the corporation. On the same day he further ordered that Charles L. F. McIntosh, one of the removed executors, be employed as general manager at a salary of $200 a week and that Richard H. Reed, the other deposed executor, be hired as an accountant at a salary of $75 per week. On August 29th, he vacated the order for employment. On the same day he authorized payment of an attorney fee to the attorney for the petitioning directors for filing the petition.

Mr. Bourne called a stockholders' meeting on August 15, 1949, a week following the filing of the petition for dissolution, and at that meeting, as the holder of all the stock, he voted to remove for cause the directors who had signed the petition. He also voted to reduce the number of directors to 3 and

then elected 2 new directors. With the leave of this Court, the 3 new directors filed a motion for substitution of themselves as parties plaintiff in the dissolution proceedings. They also filed a special appearance and moved to dismiss the petition and discharge the receiver on the ground that no notice was given Bourne of any directors' meeting for the purpose of authorizing the filing of the petition and that the proceedings were void. Both motions were denied after a hearing. Bourne thereupon filed a supplemental petition for further relief on September 13, 1949, which related the events that had transpired and the denial of the motions, requested that we prohibit Judge Sanford from exercise of jurisdiction in the proceedings and that we further issue a peremptory writ of mandamus to compel vacation of all the official actions of the circuit court and the return of the corporation's assets, books and records. We immediately issued an order to show cause. We have recently allowed Bourne to file a delayed appeal from the orders denying the motions.

At the hearing on the motion to dismiss in the circuit court, Mr. Locke, appearing on behalf of the deposed former directors, admitted in open court that no resolution was passed at the July 25th meeting, which Mr. Bourne did not attend. He claimed that no meeting of the directors was necessary under the statute, but that the possibility of requesting dissolution and receivership was discussed at the meeting and it was "subsequently" determined to the best interest of the corporation, the estate, the creditors and the stockholders to do so. The circuit court ruled that the petition was properly filed under the statute.

The petition was fatally defective in that it did not show any basis for its filing without there first being a directors' meeting called for the express purpose of filing such a petition. The general corpora-

tion law of this State, CL 1948, § 450.39 (Stat Ann § 21.39), provides:

"Shareholders' and directors' meetings shall be called in the manner provided in the by-laws. Written notice of the time, place and, in the case of special meetings, the purpose or purposes of every such meeting shall be given to all persons entitled to vote at such meeting at such time and in such manner as shall be provided in the by-laws."

The judicature act, CL 1948, § 640.1 (Stat Ann § 27.2354), provides:

"Whenever the directors, trustees or other officers having the management of the concerns of any corporation, or the majority of them, shall discover that the stock, property and effects of such corporation have been so far reduced by losses or otherwise, that it will not be able to pay all just demands to which it may be liable, or to afford a reasonable security to those who may deal with such corporation, or whenever such directors, trustees or officers, or a majority of them, shall, for any reason, deem it beneficial to the stockholders that such corporation should be dissolved, they may apply by petition to the court of chancery for the county wherein said corporation is located for a decree dissolving such corporation, pursuant to the provisions of this chapter."

The general corporation law, CL 1948, § 450.13 (4c) (Stat Ann 1947 Cum Supp § 21.13[4c]), provides:

"A majority of the board of directors shall be necessary to constitute a quorum for the transaction of business, and the acts of a majority of the directors present at a meeting at which a quorum is present shall be the acts of the board of directors: Provided, That if the directors shall severally and/or collectively consent in writing to any action to be taken by the corporation such action shall be as valid

corporate action as though it had been authorized at a meeting of the directors."

We hold that the 3 statutes above mentioned are *in pari materia.* The dissolution of a corporation is as much a transaction of corporate business as are those more ordinary transactions which will be thereby affected, and is of vastly greater moment. If considered at a special meeting, it required proper notice stating the purposes of that meeting. We can hardly conceive of an occasion when it is more vital to have a meeting at which there could be a general discussion, interchange of views and consultation of the directors than before deciding upon the taking of such an important and drastic action. The instant case does not present a situation where it would have been impossible to call a meeting of the directors in response to a notice that dissolution and receivership was the contemplated matter for consideration. There was not a dire emergency requiring individual action. Had Mr. Bourne been properly notified he might have attended the meeting and not only protested against such action if then contemplated, but possibly have come to some agreement and thereby averted the almost ruinous action of the 4 directors who, without proper notice to him and without resolution, subsequently filed the petition. The motion to dismiss the petition for dissolution should have been granted by the circuit court.

We have detailed the proceedings at some length in order to show how a group of directors, without any of them being stockholders, could attempt to place themselves and continue in lucrative positions by means of dissolution-receivership proceedings, and employment by the receiver.

Plaintiff in his brief calls attention to our holding that the jurisdiction of the probate court to administer the estates of deceased persons is exclusive and

cannot be interfered with by any other court except on appeal or where the remedies of the probate court are inadequate. *Powell* v. *Pennock,* 181 Mich 588; *Johnson* v. *Douglas,* 281 Mich 247; *Schultz* v. *Carlson,* 313 Mich 432; *Second National Bank & Trust Co.* v. *Wayne Circuit Judge,* 321 Mich 28. The contention of the plaintiff is that inasmuch as the estate of the sole stockholder was being administered in the probate court for the county of Wayne that court had acquired jurisdiction over the assets and control over the management of the corporation. This is incorrect. In *Gledhill* v. *Fisher & Co.,* 272 Mich 353 (102 ALR 1042), we referred to the conception of a corporation Chief Justice Marshall sets forth in *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat (17 US) 518 (4 L ed 629), that it is an artificial entity separate and distinct from the holders of its individual stock. The rule is correctly stated in 13 Am Jur, p 158, as follows:

"By the very nature of a corporation, the corporate property is vested in the corporation itself and not in the stockholders.   *   *   *   The corporate entity is distinct although all its stock is owned by a single individual or corporation."

The case of *Matter of the Estate of Ruggles,* 275 Mich 237, strongly relied upon by plaintiff, expressly states that the question of whether the corporate entity should be disregarded in order to place control of the corporate assets in the court administering the estate of the decedent, who owned 99 per cent. of the stock, was not before this Court. The other authorities plaintiff has cited fail to uphold his contention under the present facts. The separate entity has been elsewhere upheld in a manner similar to our present holding. *Murphy* v. *Murphy,* 125 Fla 855 (170 So 856); *Patchen* v. *Robertson,* 146 Fla 138

(200 So 400); *Moroney* v. *Moroney* (Tex Com App), 286 SW 167.

The circuit court properly granted an order of intervention to the guardians of the minor grandchildren and to the widow of the testator, allowing them to protect their interests herein involved. *Weatherby* v. *Kent Circuit Judge,* 194 Mich 46; *Smith* v. *Township of Norton,* 319 Mich 365.

After all the petitions, motions, answers and the many briefs in the mandamus and prohibition proceedings had been filed, after the oral argument before this Court and we had fully considered the case and prepared an opinion, another motion but recently has been filed by the former directors who signed the dissolution petition requesting leave from this Court to dismiss the proceedings in the circuit court, to be followed by dismissal of the instant proceedings in this Court. An answer has been filed in opposition to this motion. Granting of the order of dismissal of the case at bar is a matter of discretion under the circumstances related and, inasmuch as there has been no offer to pay costs, the motion is denied. The opinion of this Court provides for dismissal and may prevent future litigation. Plaintiff was true to his trust as executor and properly brought the proceedings in this Court. This opinion shows that the temporary receiver is not entitled to any fees for any actions he or his attorneys or appointees may have taken after our order of September 13, 1949, restraining him.

Costs will be taxed against the 4 directors both in this Court and the circuit court. It was through their actions that these proceedings became necessary. *Baldwin* v. *Branch Circuit Judge,* 48 Mich 525. Inasmuch, however, as they have acted in a representative capacity, the costs shall be a charge against the corporate assets.

The writ of prohibition is denied, but a writ of mandamus shall issue for entry of an order of dismissal in the circuit court and for the turning over of all corporate assets, records, and papers to the new directors of the corporation.

REID, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred with BUTZEL, J.

BOYLES, C. J. (*concurring*). As indicated by Mr. Justice BUTZEL in the concluding paragraphs of his opinion, we now have a situation before us which eliminates most of the issues. The 4 directors who originally filed the petition in the circuit court for Muskegon county for dissolution of Hardy Estates, Inc., a corporation, and for appointment of a receiver, have now filed in this Court a petition asking this Court to enter an order directing the Muskegon circuit court to dismiss said dissolution proceedings. These 4 individuals constituted a majority of the board of directors of said corporation at the time said petition for dissolution was filed. I agree with Mr. Justice BUTZEL that subsequently they have been legally supplanted as such directors. However, the new directors have filed a petition in the circuit court for Muskegon county asking that they be substituted for the former directors in the dissolution proceedings there pending and that upon such substitution an order be entered in said circuit court dismissing said dissolution proceedings and the appointment of a receiver, which was denied. I am in accord with the conclusion that such motion should have been granted. However, it now appears that the 4 former directors who now petition for a dismissal of said dissolution proceedings in the circuit court and the newly-elected directors who have likewise petitioned the circuit court for such dismissal are now in accord. Therefore, an order should be entered in this

Court dismissing entirely the proceedings in the circuit court of Muskegon county for a dissolution of Hardy Estates, Inc., the appointment of a receiver, and all proceedings in said court in pursuance of said petition for dissolution or as an incident of said proceedings.

In effect, such an order will be in accord with the previous orders entered in this Court prohibiting any and all further action taken by the parties in said proceedings in the circuit court, or by the circuit judge, or by the receiver appointed in said court, all of which orders are in effect hereby confirmed. Such order will also recognize and adjudicate the legality of the appointment of the new directors for Hardy Estates, Inc., and, if necessary, a writ of mandamus should issue directed to the receiver and all other individuals in any way connected with said proceedings in the circuit court to deliver over immediately to said new directors the possession of and control over all of the corporate assets, records, funds, books, papers and accounts in any way connected with said corporation.

In conclusion, said order should effectively turn over to the new directors the entire control of said corporation, and dismiss all proceedings relative thereto in the circuit court for Muskegon county. In view of the many aspects of the case, no costs should be taxed in favor of or against any of the parties, and it should be left to the new directors of the corporation to determine all matters connected with the payment of any receiver fees, attorney fees, costs or expenses out of the corporate assets.

NORTH, J., concurred with BOYLES, C. J.