Campbell, J.:
Tuttle, the plaintiff in error,.had judgment rendered against him for certain stock assessments. His liability as a stockholder was based, if at all, on a subscription alleged to have been made to the stock of “The Grand Trunk *Railway Company of Michigan,” organized December 21, 1866. That company is claimed to have become consolidated on the 28th of August, 1868, with .the Grand Trunk Railway Company of northern Indiana into a corporation bearing the same name as the defendant in error. This new company was again consolidated, without change of name, with the St. Joseph Valley Railroad Company, October 8, 1870.
Many questions arosé on the trial, and are raised on the record, as to Tuttle’s liability. The preliminary inquiry, underlying all the rest, is, whether he was bound by the various consolidation proceedings.
*235 The objection that these were conducted and certified in such a way as to make the new companies corporations de facto, cannot preclude him from entering on this inquiry. He entered into relations with a company having its business confined to certain parts of Michigan, and he had a right to insist that he should not be brought into any other contract relations in any way not contemplated by the contract itself. That referred to the statutes then in force, or as they might be lawfully amended within constitutional bounds. No change in the corporation which violated any of the substantial statutory conditions could bind a dissenting stockholder, or compel him to submit to the new order of things against his will. — Mansfield, Coldwater & Lake Michigan R. R. Co. v. Drinker, 30 Mich. R., 124.
The first consolidation was made under an agreement purporting to have been signed by the president and secretary of each company, on behalf of their respective companies, and dated July 14, 1868. It provided for a first election of directors on the 20th of August, 1868, at three o’clock P. M. The articles wore filed with the secretary of state on the 25th of August, 1868. There was no evidence that they were executed by the directors of the respective companies, and they do not so purport on their face to have been executed or authorized.
Notice of a stockholder’s meeting to be held August 20, 1868, at two o’clock P. M., and purporting- to be given by *the president and secretary by order of the board of directors, but with no evidence to that effect, was dated July 23, 1868, and published in the Detroit Free Press for twenty-seven successive days, beginning July 25th, and in the Jackson Patriot once in each week for three weeks, the first publication being July 29, and the last August 19th. The notice did not show the object of the meeting. On the 20th of August, 1868, the agreement appears to have been sanctioned by a stockholder’s meeting.
On the same day the consolidated body elected directors.
A by-law was shown (the date and manner of its adoption not appearing of record in this cause) fixing the 20th of October as the day of the annual meeting.
*236 On the 20th of October, 1869, various persons were elected directors of the company.
On the 8th of October, 1870, an agreement was made on behalf of the two companies forming the later consolidation, purporting to be signed by their presidents and secretaries and a majority of their respective directors, fixing the election of directors in the new consolidation for eight o’clock in the morning of the same day.
No notice of the meeting of stockholders to consider this agreement was ever published. On the first day of October, 1870, one week before the agreement, the directors ordered the secretary to call a meeting of stockholders for the 8th, to consider and vote upon “the proposition to consolidate with the St. Joseph Valley Railroad Company in Indiana,” and in case of consolidation, to elect directors. He was ordered to give notice to the stockholder’s “by depositing either written or printed notices of the same in the postoifice particularly-directed to each of the stockholders at his place of residence at least five days prior to such meeting.”
The evidence of notice was the affidavit of the secretary that on the 3d of October he posted thp notices “ directed to each stockholder of said railroad company at his place of residence, according to the best of the knowledge and belief of this deponent.”
'•'’The stockholders met and approved the articles and elected directors on the 8th of October, 1870. The articles were filed on the 11th of October.
The proceedings to consolidate railroad companies were, when all these acts were done, governed by section 50 of the general railroad law of 1855, which had remained unchanged. That section required the process to consist of an agreement made by the directors and afterwards confirmed. “The directors of said two or more corporations may enter into an agreement under the corporate seal of each, for the consolidation of the said two or more corporations,” etc. “Such agreement of the directors shall not be deemed to be the agreement of the said two or more corporations until after it has been submitted *237 to the stockholders of each of said corporations separately, at a meeting thereof to be called as aforesaid,” etc.
This indicates 'that before any steps are taken to call the-stockholders together there must be some agreement actually made by the directors. It is an agreement to be ratified, and not a proposition to be accepted, which is to be acted on by the stockholders. That agreement is the first step in the proceedings to consolidate.
This section contains no provision touching the time and manner of giving notice. The meeting “to be called as aforesaid ” "must refer to some previous provisions. As the law originally stood, section four required the first stockholders’ meeting to choose directors, to be called by the commissioners on twenty days’ publication in a Detroit daily newspaper and in a newspaper published in each county through which the road was to run. Section six provided that special stockholders’ meetings might be called at any time by the directors, or one-fourth in interest of the stockholders, “by giving public noti<’<' A the time and place of such meeting, in the same manner as is provided in section four of this act.” Section forty-nine provided for railroads making running arrangements, and that no arrangement should be completed until a meeting of stockholders should *be called by the directors, “ at such time and place, and in such manner as they shall designate.”
It seems to have been assumed in the later consolidation appearing on the record, that the reference in section fifty for the requisites of notice was to section forty-nine, although that fixes neither, while section six and section four were explicit. Assuming this to be so, it would be a violent construction to claim that section forty-nine was designed to make any notice good which the directors chose to give, when the very object of both sections is to prevent them from binding the corporation until the stockholders have had an opportunity to be consulted, which they would not have unless upon ample notice. At common law all notices were required to be personal, unless otherwise fixed by the by-laws, and notice by publication, or *238 notice by mail would be nugatory. ■••Ang. & A., § 492; and see Burhans v. Corey, 17 Mich., 282.
Notices of meetings for any special and exceptional purpose were also required to show the object of the call. — Id. It would seem no more than reasonable to hold that under such a general clause the notice, while it might be personal instead of by publication, should not be any less full than in other eases, where the action of the meeting could not be as important, and ■could have no such sweeping operation as merging the corporate existence.
But this becomes less necessary to be considered because in 1859 section six was so modified as to cover in express terms the whole subject under a new and extended rule. “At least thirty days’ notice of the time and place of every general or special meeting of the stockholders shall be given in one or more daily newspapers printed in the city of Detroit, and also in one or more newspapers printed in the county where the principal office of the company is situated, if it be not in said city: Provided, That such notice, when given by the stockholders, shall state the object of such meeting.” *
This section applies in terms to every corporation ^meeting, general or special, and leaves no room for construction. It requires ten days longer notice than before, but dispenses with publication in some of the newspapers along the line. There is no reason to imagine the legislature, in making this important change universally applicable by its terms, supposed or intended that a meeting so vital to the interests of stockholders as a consolidation meeting, could be called on any less notice. The language admits of no exceptions. Longer and fuller notice might still be given, but it could not be shortened.
Later legislation has required for consolidation meetings sixty days’ notice, not only of the time and place, but of the object of the meeting.— C- L. of 1871, § 281fi; L. of 1878, p. 522. How far the latter obligation was formerly implied we need not consider.
The amendment of 1859 was in force during all of the proceedings under review, and is conclusive as to their insufficiency *239 ad against tbe plaintiff in error, who never assented to them. The notice of the first consolidation does not appear to have been given under any instructions from the directors, and the agreement is not shown to have been made by them. But whether their act or not, the notice was not published thirty days.
The second consolidation is still more irregular, for notice was only given five days; it was neither published nor personally served, and it was given, and the day of meeting came, before there was any agreement entered into by the directors at all.
It is not necessary, therefore, to consider the other points raised. Plaintiff in error is not a member of the corporaton now prosecuting him, and they have no claim upon him.
Judgment must be reversed, with costs, and a new trial ordered.
The other justices concurred.