DARVIN v BELMONT INDUSTRIES, INC

1. CORPORATIONS—REDUCTION OF BOARD OF DIRECTORS—MINORITY SHAREHOLDERS.

A minority shareholder did not meet his burden of proving by the preponderance of the evidence that he voted against reducing the number of members on the board of directors so as to avail himself of the protection provided by statute that may prevent reduction where the votes against reduction would have been sufficient to elect one director if voted cumulatively where testimony that he had voted was refuted by both the minutes of the meeting and the testimony of the other three directors (MCLA 450.13[3]).

2. CORPORATIONS—SHAREHOLDERS' MEETING—NOTICE.

A purpose of the requirement that notice of a shareholders' meeting be given is to allow a shareholder sufficient time to arrange to attend the meeting (MCLA 450.39).

3. CORPORATIONS—SHAREHOLDERS' MEETING—SPECIAL MEETING—NOTICE.

The purpose of the requirement that notice of a special shareholders' meeting specify the purpose of the meeting is to provide a shareholder with sufficient opportunity to study contemplated action and decide whether to oppose or support it (MCLA 450.39).

4. CORPORATIONS—SHAREHOLDERS' MEETING—WAIVER OF DEFECTIVE NOTICE.

Mere attendance at a special meeting of shareholders coupled with the nonvoting of shares does not constitute sufficient participation to waive a defect in the notice of the meeting caused by the failure to specify the purpose of the meeting and

REFERENCES FOR POINTS IN HEADNOTES

[1] 19 Am Jur 2d, Corporations § 1083.
[2, 6] 19 Am Jur 2d, Corporations § 608.
[3] 19 Am Jur 2d, Corporations § 614.
[4, 5, 7] 19 Am Jur 2d, Corporations § 615.
[8] 18 Am Jur 2d, Corporations § 174.

the failure to give the length of notice specified in the corporate by-laws (MCLA 450.39).

5. CORPORATIONS—SHAREHOLDERS' MEETING—WAIVER OF DEFECTIVE NOTICE—ATTENDANCE.

A corporate by-law providing for waiver of notice "whenever all the shareholders shall meet" must be read to require consent of all shareholders to the meeting or participation therein in order for there to be a waiver of defects in the notice of a meeting (MCLA 450.39).

6. CORPORATIONS—SHAREHOLDERS' MEETING—NOTICE.

A corporation can neither eliminate notice altogether nor interpret its notice provision in such a way that the protection it provides shareholders is virtually eliminated, for such action would contravene statutory and public policy in this state (MCLA 450.39).

7. CORPORATIONS—REDUCTION OF BOARD OF DIRECTORS—SHAREHOLDERS' MEETING— DEFECTIVE NOTICE.

Actions taken at a special meeting of shareholders at which the majority reduced the number of members on the board of directors and removed a minority shareholder from the board were invalid where the notice of the meeting given to the minority shareholder did not specify the purpose of the meeting and was given only one day prior to the meeting, contrary to the ten-day by-law notice requirement, and where the minority shareholder, by attending the meeting, objecting to the lack of notice, and refusing to vote his shares, did not waive the defects in the notice he received (MCLA 450.39).

8. CORPORATIONS—STATEMENT OF OPERATIONS AND PROPERTY—CURRENT STATEMENT.

A statement of a corporation's operations and property, when required to be made available to a shareholder, must be one prepared within the four months prior to the date the statement is made available to the shareholder (MCLA 450.45).

Appeal from Wayne, James N. Canham, J. Submitted Division 1 December 9, 1971, at Detroit. (Docket No. 10893.) Decided May 25, 1972. Leave to appeal denied, 388 Mich 777.

Complaint by Frank Darvin against Belmont Industries, Inc., and V & F Investment Company for a writ of mandamus to order defendants to set

aside actions taken at their shareholders' and directors' meetings and other relief. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Karl Reibel,* for plaintiff.

*Wilson M. Jackson,* for defendants.

Before: LESINSKI, C. J., and LEVIN and O'HARA,* JJ.

LESINSKI, C. J. Plaintiff Frank Darvin brought this action for a writ of mandamus to order defendant corporations to set aside the actions taken at their shareholders' and directors' meetings of September 12, 1969, to furnish plaintiff a proper statement of defendants' operations and properties, and to pay plaintiff his director's fee retroactively from September 12, 1969, in addition to certain other relief. The trial court, sitting as trier of fact, returned a verdict of no cause of action.

Plaintiff Darvin is a stockholder of defendants Belmont Industries (hereinafter Belmont) and V and F Investment Company (hereinafter V and F). Plaintiff owns 170 shares of defendant Belmont's stock out of a total of 700 outstanding shares. Three other individuals, Fleet Underwood, Vincent Sychta, and Frank Punturiere, each own 170 shares of defendant Belmont's stock. A fifth shareholder possesses the remaining 20 shares.

Plaintiff holds 3,200 shares of stock in defendant V and F, out of a total of 12,800 outstanding shares. Underwood, Sychta, and Punturiere are the only other shareholders, each owning 3,200 shares also.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Plaintiff, along with Underwood, Sychta, and Punturiere, had comprised the board of directors of defendant Belmont since March 7, 1962. The four had also made up the board of directors of defendant V and F since the beginning of its corporate existence in January 1965. They were also officers and employees of defendant companies.

A dispute over corporate management between plaintiff Darvin and Underwood, then president of defendant corporations, developed in the summer of 1969. Pursuant to the dispute, Underwood, Sychta, and Punturiere agreed among themselves that they no longer wanted plaintiff Darvin in the companies or on the boards of directors. Accordingly, a special shareholders' meeting and board of directors' meeting of both corporations were scheduled for September 12, 1969. Plaintiff received notice on September 11, 1969, of the meetings to be held the next day. According to the trial testimony of Mr. Underwood, the purpose of the meetings was to reduce the board of directors from four to three, and thereby remove plaintiff Darvin from the boards of the two corporations.

The testimony adduced at trial as to what transpired at the meetings is in conflict. However, it was undisputed that plaintiff Darvin and his attorney attended the shareholders' meetings of defendants Belmont and V and F, and that objections were made at the beginning of each meeting by plaintiff's attorney to the lack of notice thereof. Plaintiff Darvin claimed that he voted his shares of stock against the motions to reduce the boards of directors. The other three directors, Underwood, Punturiere and Sychta, all testified that plaintiff Darvin did not vote his shares on the proposed by-law amendments that would reduce the size of the

boards of directors from four members to three. The three likewise testified that plaintiff Darvin failed to vote his shares in the election of the new boards of directors at the shareholders' meetings of defendant corporations.

The minutes of the shareholders' meetings of defendants Belmont and V and F indicate that plaintiff Darvin did not vote on the proposals to reduce the boards of directors from four to three, the proposals carrying unanimously. The minutes also reveal that plaintiff Darvin did not vote in the elections to fill the reduced three member boards of directors. According to the minutes, Underwood, Punturiere, and Sychta were elected to the new boards. At the board meetings on September 12, 1969, Darvin was removed as an officer of defendant corporations. Thereafter, his position as an employee with defendant corporations was also terminated.

At the outset, we emphasize that this case involves what have traditionally been called "close corporations". There are only five shareholders of defendant Belmont's stock, and four owners of defendant V and F's stock. The shareholders were virtually coextensive with the officers and directors of defendant corporations.[1] Their stock was not publicly traded. Plaintiff Darvin and Underwood, Sychta, and Punturiere were all employees of defendant corporations. Although we do not deem it necessary for the purposes of this case to define "close corporations",[2] we note that all of

[1] The only exception was the fifth shareholder of defendant Belmont, who owned 2.9% of its shares. This shareholder, although not an officer or director of defendant corporation, was the corporate attorney.

[2] The proposed Michigan Business Corporation Act, submitted as part of the Michigan Law Revision Commission's 1970 Report to the Legislature, eschews a general definitional approach for the close corporation. Instead, each section relating to close corporations pos-

these characteristics have been commonly employed as standards in determining what is a close corporation. 1 O'Neal, Close Corporations (4 ed), § 1.02, pp 2–7.

The shareholder in the close corporation faces special problems. If dissatisfied with corporate management, he has no ready market for his shares, as opposed to the shareholder of a corporation the stock of which is publicly traded. He often discovers that the only prospective purchasers of his shares are the very individuals with whom he has disagreed over corporate policy. If the majority attempts to force out the minority shareholder in the close corporation, other difficulties may be encountered:

> "As a result of a squeeze play, a minority shareholder may count the following among his losses: (1) he has been divested of any control in the corporation; (2) he has been deprived of information about company affairs and corporate decisions; (3) he has been removed from employment with the company; (4) his investment has ceased to have any value because he is not receiving either dividends or salary; and (5) he cannot get his money out of the business or even use his interest as security for borrowing." F. O'Neal and W. Moeling, *Problems of Minority Shareholders in Michigan Close Corporations,* 14 Wayne L Rev 723, 731–732 (1968).

Courts and legislatures have been cognizant of these special problems inherent in the close corporation, and have applied corporate doctrine accordingly. The Illinois Supreme Court, in *Galler v Galler,* 32 Ill 2d 16, 27; 203 NE2d 577, 583–584 (1964), had before it the question of a shareholder agreement's validity in a close corporation. It rec-

sesses its own requirements that a corporate body must meet in order to fall within the ambit of the provision. See S. Siegel, *The Proposed Michigan Business Corporation Act,* 4 U Mich J Law Reform 161, 165–167 (1970).

ognized explicitly the special character of the close corporation, stating that:

"While the shareholder of a public-issue corporation may readily sell his shares on the open market should management fail to use, in his opinion, sound business judgment, his counterpart of the close corporation often has a large total of his entire capital invested in the business and has no ready market for his shares should he desire to sell. He feels, understandably, that he is more than a mere investor and that his voice should be heard concerning all corporate activity. * * * Moreover, as in the case at bar, the shareholders of a close corporation are often also the directors and officers thereof. With substantial shareholding interests abiding in each member of the board of directors, it is often quite impossible to secure, as in the large public-issue corporation, independent board judgment free from personal motivations concerning corporate policy."

The Court in *Galler, supra,* upheld the validity of the board shareholder's control agreement, even though there was no statute declaring such agreements valid in close corporations.

It is in this close-corporation framework, then, that we examine plaintiff Darvin's claims on appeal. His first assignment of error attacks the trial court's ruling that plaintiff had failed to meet his burden of proof on his allegation that he had voted his shares on the motions reducing the number of members of the boards of directors from four to three. If plaintiff Darvin had voted his shares against the motions, owning, as he did, 3,200 of the 12,800 shares in V and F and 170 of the 700 shares in Belmont, he could have availed himself of the protection afforded by MCLA 450.13(3); MSA 21.13(3). The Legislature has there provided:

"That the number of directors of any corporation shall not be reduced in case the votes of a sufficient

number of shares are recorded against such proposed reduction, which, if cumulatively voted, would elect 1 or more directors, where the same number of shares if voted cumulatively would be sufficient to elect the same number of directors of the board so reduced."

Plaintiff introduced competent evidence that he had voted at the meetings, through his personal testimony, but both the minutes and the testimony of the three other directors refuted plaintiff Darvin's claim. The trial judge's finding that plaintiff had not established his case by a preponderance of the evidence has support in the record, and does not appear to be clearly erroneous. Accordingly, we defer to the judgment of the trial court on this issue. See *Cooper v State Farm Mutual Automobile Insurance Co,* 33 Mich App 390, 393 (1971).

Plaintiff Darvin next argues that the shareholders' meetings were invalid for lack of notice. MCLA 450.39; MSA 21.39, provides that:

"Written notice of the time, and place and, in the case of special meetings, the purpose or purposes of every such meeting shall be given to all persons entitled to vote at such meeting at such time and in such manner as shall be provided in the by-laws."

The by-laws of defendant corporations are identical in regard to notice of shareholders' meetings. Article 11, § 3 of defendants' corporate by-laws provides that shareholders shall receive notice "at least ten days prior to any meeting". Since plaintiff Darvin received notice only one day prior to the meetings, he concludes that the notice was defective.

Plaintiff Darvin also contends that the notice he received was insufficient in the respect that it contained no mention of the purpose of the special meetings, as is required by MCLA 450.39; MSA

21.39. According to the testimony of Underwood at trial, the purpose of the meetings was "to reduce the Board from four to three and elect a new Board". The notices of the shareholders' meetings contained no mention of a proposed by-law amendment that would reduce the number of board members from four to three.

In relation to notice defects, the by-laws state that "whenever all the shareholders shall meet, in person or by proxy, such meeting shall be valid for all purposes, without call or notice, and at such meeting any corporate action shall not be invalid for want of notice".

It was not disputed that plaintiff and his attorney attended the shareholders' meetings of defendant corporations on September 12, 1969. It was also not controverted that plaintiff's attorney objected to the want of notice at the beginning of each meeting. Controversy did center on whether plaintiff Darvin had voted his shares, though. His contention that he did vote was not accepted by the trial court, in the light of the testimony of the three other directors present and the record in the minutes that he did not vote his shares on any issue. The trial court ruled that plaintiff Darvin's actions waived any defect in the notice that he received of the meetings, despite his failure to vote.

The question that we address, then, is whether plaintiff Darvin's attendance at the meetings, his objections to the lack of notice, and his responses that he did not wish to vote his shares when so asked at the meetings, as testified to by directors Underwood, Punturiere and Sychta, constituted a waiver of the notice defects.

A purpose of the time-notice requirement is, of course, to allow a shareholder sufficient time to

arrange to attend the meeting. If the shareholder did, in fact, attend the meeting, despite a failure by the corporation to comply with the time-notice requirement, courts have reasoned that he has suffered no harm because he was still able to be present. The purpose-notice requirement serves another function, however. It provides a shareholder with sufficient opportunity to study contemplated action at the meeting and the legality thereof. When the shareholder possesses knowledge of the purpose of a special meeting, he can study the proposal, arrive at a position, and either oppose it or support it. One commentator has even suggested that notice be given of any extraordinary matter that is to be considered at a regular meeting:

"With such notice, the shareholder has the opportunity to think upon, and discuss with other shareholders, the matter and be prepared to vote intelligently upon it." Lattin on Corporations (1st ed), p 286.

We find the language of two Michigan Supreme Court cases, although they concern the problem of notice at directors' meetings and not shareholders' meetings, to be relevant to the issue which confronts us here. In *Zachary v Milin*, 294 Mich 622, 625 (1940), the Supreme Court held a directors' meeting to be formal, in light of the trial judge's finding that the director complaining of lack of notice had first sought at the meeting to have another director removed as an officer of the corporation. The Court noted that:

"To hold that certain directors could form a quorum by coming upon another in a room, or in the street, and, despite the protests of the other, could, by merely declaring the body of persons so gathered together to be a meeting, actually give it that complexion, would be

illegal. * * * A director of a corporation is not to be trapped into attendance of a meeting against his will. The directors of a corporation have no authority to act as a board of directors except at a regularly constituted meeting, in the absence of a consent in writing. * * * But if all of the members of the board of directors *are present and participate in the meeting or proceedings,* then the meeting may be said to be duly and legally held." (Emphasis supplied.)

Thus, the Court held that the members of the board not only had to be present, but also had to participate, before a defect in notice would be deemed waived.

The case of *Bourne v Muskegon Circuit Judge,* 327 Mich 175 (1950), concerned a purpose-notice requirement at a directors' meeting. Notice of the special directors' meeting was sent out, with several purposes enumerated, but no mention was made of the fact that dissolution or receivership proceedings were contemplated by the corporation. The Court held that such omission was fatal to the validity of the notice and pointed out that the situation "was not a dire emergency requiring individual action". *Bourne, supra,* 190. That notice of a special shareholders' meeting must include the purpose of the proceeding has long been the law in Michigan. *Tuttle v The Michigan Air Line R Co,* 35 Mich 247 (1877).

There has been a recognition by the courts of this state, as indicated by *Bourne, supra,* and *Zachary, supra,* that the notice requirement has other functions besides that of insuring a shareholder's or director's attendance at a meeting. Courts in other jurisdictions have ruled specifically on the issue at hand, holding that attendance at a meeting, without participation, does not constitute waiver of defective notice. In *Dolbear v Wilkinson,*

172 Cal 366, 370; 156 P 488, 490 (1916), the Court stated:

"There is no ground for the claim that the want of notice was waived by the defendants. The notice received by them did not advise them that the election of directors was to be taken up, and they did not consent to such election by attending the meeting. The evidence is undisputed that they did not participate in such election, and the mere fact that they may have been physically present when an unauthorized minority was seeking to take action cannot deprive them of the right to object to such action."

See, also, *People ex rel Carus v Matthiessen,* 269 Ill 499; 109 NE 1056 (1915).

Although the notice given to plaintiff Darvin in the instant case was sufficient to obtain his physical presence at the meeting, it is plain that it was not sufficient to allow him to ascertain what action was to be taken at the special meeting of defendant corporations, and to determine what steps could be taken to protect his position. The weight of the evidence at trial, although it was contradicted, revealed that plaintiff had not voted his shares at the meeting. He specifically refused the opportunity to do so. If he had voted his shares, he could have made use of the protection afforded him by MCLA 450.13(3); MSA 21.13(3), which governs reduction of members of the board of directors in this state. With sufficient notice, plaintiff Darvin and his attorney could have had the opportunity to apprise themselves of the existence of this provision which has been recognized as supplying special protection to the minority shareholder in the close corporation. See F. O'Neal and W. Moeling, *supra,* p 736.

Accordingly, we hold that plaintiff Darvin's mere attendance at the meeting coupled with the

nonvoting of his shares was not sufficient participation to waive the notice requirement under the facts of this case.

Defendants maintain that their by-law provision, providing for waiver of notice "whenever all the shareholders shall meet", should control in this situation, however. The statutory provision concerning notice does give corporations flexibility in setting notice requirements to meet their individual needs. However, to interpret the statutory notice requirement in the manner which defendants urge would vitiate in large part the purposes thereof. This provision of the by-laws must be read to require consent of all shareholders to the meeting or participation therein.

Corporations can determine, under the statute, how much notice will be given of shareholders' meetings. Defendants in this case chose ten days. Yet, a corporation can neither eliminate notice altogether, nor interpret its notice provision in such a way that the protection it provides shareholders is virtually eliminated, for such action would contravene statutory and public policy in this state. As the New York Court of Appeals stated in *Benintendi v Kenton Hotel, Inc,* 294 NY 112, 118; 60 NE2d 829, 831 (1945):

"The State, granting to individuals the privilege of limiting their individual liabilities for business debts by forming themselves into an entity separate and distinct from the persons who own it, demands in turn that the entity take a prescribed form and conduct itself, procedurally, according to fixed rules."

The Court, in *Benintendi, supra,* struck down, as invalid, corporate by-laws which ran afoul of the state corporation law and public policy.

Plaintiff lacked proper notice of the sharehold-

ers' meetings in this case. He did not waive that notice by attending the meetings, objecting to the lack of notice, and refusing to vote his shares. Therefore, the actions of defendant corporations at those shareholders' meetings of September 12, 1969, in reducing the board of directors from four to three, and electing a new board, are invalid. Plaintiff Darvin is restored to his position as director which he held prior to September 12, 1969.

Plaintiff raises one further issue which requires attention. Plaintiff, having met the requirements of MCLA 450.45; MSA 21.45, requested a statement of the operations and properties of defendant corporations. The statement which he received from defendants in response to his request was not prepared within the four months preceding the date on which it was made available to plaintiff, as is required by statute. The trial court's refusal to grant plaintiff relief on this matter was error, and defendants are ordered to furnish plaintiff with a statement of operations and properties prepared within the preceding four months.

Plaintiff requests various other relief from this Court, such requests not having been ruled on by the trial court in view of its disposition of the case. We remand these other matters to the trial court for disposition not inconsistent with this opinion. We reserve no jurisdiction.

Reversed and remanded.

All concurred.