**In re ACOUSTIC FIBER SOUND SYSTEMS, INC., Debtor.**

**Bankruptcy No. 82–600RA.**

United States Bankruptcy Court,
S. D. Indiana,
Indianapolis Division.

May 4, 1982.

Jerry Williams and John E. Taylor, Louis F. Cohen, Eric C. Redman and Theresa Dearing, Indianapolis, Ind., for petitioners.

Elliott D. Levin and Neil Shook, Indianapolis, Ind., for AFS.

Alan H. Lobley and Charles E. Greer, Indianapolis, Ind., for Doan.

Edward B. Hopper, II, R. M. Kroger, Indianapolis, Ind., for Creditors' Committee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ENTRY ON MOTION TO DISMISS

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the court on the Motion to Dismiss Petition in Bankruptcy filed by petitioners George W. Boon ("Boon"); Gary Ruben ("Ruben"), Marion K. Wingard ("Wingard"), Alvin Strawn ("Strawn"), Stephen R. Davis ("Davis"), and Robert E. Croup ("Croup"). By their motion petitioners seek to dismiss a Chapter 11 Petition filed by Acoustic Fiber Sound Systems, Inc., ("AFS"). Intervening in the instant controversy are Doan Associates ("DA") and Doan Resources Corp., ("DRC"), (collectively referred to as "Doan"). The various parties have filed briefs in support of their respective positions. A hearing was held in this matter at which petitioners appeared in person and by counsel Jerry Williams, John E. Taylor, Louis F. Cohen, Eric V. Redman and Theresa Dearing; AFS appeared by counsel Elliott D. Levin and Neil Shook; Doan appeared by counsel Alan H. Lobley and Charles E. Greer; and the creditors' committee appeared by counsel Edward Hopper and R. M. Kroger. Fol-

lowing the hearing the parties filed briefs and reply briefs, and tendered proposed findings of fact and conclusions of law.

The main issue before this court is whether the instant Chapter 11 Petition is properly before it. At first blush it would appear that that issue is a relatively simple one to resolve. Such is not the case however. The resolution of that issue involves the question of whether the instant petition was filed by the legal and duly elected directors and officers of the debtor corporation. The hearing held in this matter involved a substantial amount of testimony and the introduction of numerous exhibits. During the course of these proceedings it became clear that the relationship of the respective parties over the past months and during the course of this proceeding has been acrimonious at best.

In support of its Motion to Dismiss, petitioners maintain that the instant petition was filed by directors and officers of AFS who were elected at improperly held and unlawful special shareholders and directors meetings. Petitioners further maintain that in light of the impropriety and unlawful nature of these meetings, all actions taken at those meetings—including the filing of the instant Chapter 11 Petition—are void and of no effect.

As to the special shareholders meeting petitioners cite the following defects or irregularities:

1. Doan failed to notify 100% of the AFS shareholders of the special shareholders meeting;

2. The notice sent by Doan was defective in that:

   a) It did not contain the full and complete address of the location of the meeting; and

   b) The purpose of the meeting was not properly stated:

3. No officer of AFS was present to officiate;

4. All motions were seconded by a non-shareholder and, therefore, should have failed for want of a second.

5. The proxies granted to H. D. Doan, Ian R. N. Bund, and Max Key should not have been voted thereby resulting in a lack of a quorum.

As to the special directors meeting, petitioners cite the following defects and irregularities:

1. Notice of the meeting should have been given to the directors Doan sought to replace; and

2. The meeting was held via conference call, which was not held in accordance with applicable law.

In addition to the above, petitioners also maintain that Doan's actions violated provisions of the SBA. Because of such violation petitioners contend that this court should not allow the instant petition because to do so would condone the unlawful acts of Doan.

After due consideration of the testimony and evidence presented, arguments of counsel and briefs filed in this matter, and being duly advised in the premises, the court does now make its findings of fact and conclusions of law.

FINDINGS OF FACT

1. AFS is a corporation organized and existing under the laws of the State of Illinois and maintains its principal place of business in the State of Indiana.

2. AFS was originally formed by the petitioners Davis, Croup, Boon and Strawn.

3. Since the founding of AFS in 1971 Davis has served as its President, chief executive officer, and director. Croup has most recently held the office of Senior Vice President and Secretary. Croup is also a director of AFS. Of the six petitioners, only Davis and Croup were full time employees of AFS. Boon is a certified public accountant licensed in the State of Illinois and is a director of AFS. Strawn is now retired from his previous position as Vice President in charge of sales and is also a director of AFS. Ruben is an independent marketing consultant and serves as a director of AFS. Wingard is an independent financial consultant and also serves as a director of AFS.

4. The last annual meeting of the shareholders of AFS was held on June 23, 1981. At that meeting the shareholders elected eight persons to serve on the Board of Directors of AFS. Those persons were the six petitioners herein, Ian R. N. Bund ("Bund") and Max Key ("Key").

5. Bund is the President and one of four directors of DRC. Bund is also a general partner of DA.

6. Key, at the time of his election as director of AFS in June, 1981, and continuing until his death in August, 1981, was a consultant to DRC.

7. Following the death of Max Key, his position on the Board of Directors of AFS was filled by James Head ("Head"), one of the four directors of DRC.

8. DRC is a corporation organized and existing under the laws of the State of Michigan and is a Small Business Investment Corporation licensed by the Small Business Administration (SBA). DA is a Michigan partnership. Both are engaged in the business of providing venture capital to small businesses.

9. Subsequent to the founding of AFS Doan became an investor in AFS. Doan is also a shareholder in AFS and currently owns 243,707 shares of stock; said amount represents approximately twenty-four per cent of the current outstanding shares of AFS stock.

10. In July, 1981, AFS sought to restructure a loan due and owing the Economic Development Administration. As part of the restructuring Doan was to convert four subordinated promissory notes issued to Doan by AFS in the amount of approximately 1.7 million dollars to voting preferred stock and was to convert a demand note it held to a term note.

11. On August 6, 1981, the closing relating to the debt restructuring took place at which Davis, Boon, Croup and AFS Investment Corp. ("shareholders") and AFS and Doan executed a Debt Conversion Agreement in which, inter alia, Doan agreed to convert its promissory notes totalling approximately 1.7 million dollars to preferred voting stock and the shareholders agreed to tender executed Substitute Irrevocable Proxies to Doan.

12. On August 6, 1981, the above shareholders executed Substitute Irrevocable Proxies to H. D. Doan, Ian R. N. Bund and Max Key. H. D. Doan is the founder of Doan and is Chairman of the Board of DRC. The proxies were for the following amounts:

| AFS Investment Corp. | 125,342 shares |
|---|---|
| George W. Boon | 72,377 shares |
| Stephen R. Davis | 207,967 shares |
| Robert E. Croup | 99,384 shares |

13. The proxies were exercisable upon, inter alia, the following event of default: "(c) The failure of AFS to make payment of principal or interest when due The Indiana National Bank (the "Bank") (or any subsequent holder of the debt described hereafter) on debts owed by AFS to the Bank under that certain Subordinated Debt Consolidation Agreement dated December 31, 1981 but only so long as such debts have been guaranteed by, or which have security to support any such guaranty provided by, Doan Resources Corporation, Doan Associates, and H. D. Doan or any one of them;"

14. The proxies also contain the following language:
"This proxy has been granted and is accepted in accordance with certain agreements of the undersigned and others . . . ."

15. On August 6, 1981, and continuing thereafter, AFS was in default on the above debt to The Indiana National Bank.

16. Davis testified that he made an agreement with Max Key prior to the August 6, 1981 closing that the loan default to The Indiana National Bank would not trigger the exercisability of the proxies until AFS was able to close a line of credit for one million dollars, and that he confirmed this agreement with H. D. Doan at the closing on August 6, 1981. The notes of Max Key of his telephone conversations

with representatives of AFS do not reflect any such agreement. Substantial correspondence and communication passed between AFS and its agents and Doan and its agents prior to and subsequent to the closing held on August 6, 1981. A portion thereof dealt with the closing held on August 6, 1981. None of this correspondence or communication referred to the alleged agreement between Davis, Key and H. D. Doan. In fact, no mention was made of the agreement after AFS learned on October 21, 1981, that Doan believed it could vote the proxies.

17. There existed no agreement between Davis, Max Key and H. D. Doan that the default to The Indiana National Bank would not trigger the exercisability of the proxies until AFS could obtain a line of credit for one million dollars.

18. Ill.Ann.Stat. Ch. 32, § 157.45 (Smith-Hurd Supp.1981) provides in part:

"Any person who shall have been a shareholder . . . or who shall be the holder of record of at least five per cent of . . . the outstanding shares . . . shall have the right to examine . . . for any purpose, [the corporation's] . . . record of shareholders . . . ."

19. Beginning on October 21, 1981, Doan attempted to obtain a current list of the shareholders of AFS including the name, mailing address of each shareholder, and the number of shares held by each shareholder. Doan, via Bund, had a list of AFS shareholders dated June 1, 1981, which Bund obtained at the last annual meeting of shareholders held on June 23, 1981. The attempt to obtain the current list involved a request for the list from Davis and Croup by Doan or by counsel for Doan. Doan was unsuccessful in obtaining the list.

20. On December 15, 1981, Ian R. N. Bund, as a director of AFS, filed an action against Stephen R. Davis and AFS in the Marion County Superior Court of Indiana (Cause No. S181–1605) for the purpose of obtaining a current list of AFS shareholders. That action is still pending.

21. On December 15, 1981, Doan also filed a similar action in the Marion County Superior Court of Indiana (Cause No. S381–1609). That action is still pending.

22. The corporate law of the State of Illinois, Ill.Ann.Stat. Ch. 32 § 157.26 (Smith-Hurd Supp.1981) and Article II, Section 2 of the By-Laws of AFS provide that a twenty per cent shareholder may call a special meeting of shareholders.

23. On January 28, 1982, Doan as holder of greater than twenty per cent of the outstanding shares of AFS called a special meeting of shareholders and mailed the following notice to the shareholders of AFS:

NOTICE OF SPECIAL MEETING OF SHAREHOLDERS TO BE HELD ON FEBRUARY 19, 1982
TO: THE SHAREHOLDERS OF ACOUSTIC FIBER SOUND SYSTEMS, INC.

Notice is hereby given, in accordance with the By-Laws of the corporation, that a special meeting of the shareholders of Acoustic Fiber Sound Systems, Inc will be held on February 19, 1982 at 10:30 AM (Illinois time) at 33 North Dearborn Street, Chicago, Illinois for the following purposes:

1. To consider and act upon a proposal to remove the following directors from the existing Board of Directors: George W. Boon, Gary Ruben, Marion J. Wingard, Alvin A. Strawn, Stephen R. Davis and Robert E. Croup,

2. To consider and act upon a proposal to elect new directors to fill the vacancies on the Board of Directors, as follows: Arnold A. Butterworth, Philip A. Hanmer, Norman W. Kirschke, Richard J. Brandewie, Lucille I. Person and Nancy T. Sandt,

3. To transact such other business as may properly come before the meeting or any adjournment thereof.

Passage of all of the above proposals will result in the Corporation having an eight-person Board of Directors consisting of Ian R. N. Bund, James D. Head, Philip A. Hanmer, Norman W. Kirschke, Arnold A. Butterworth, Richard J. Brandewie, Lucille I. Person and Nancy T. Sandt.

The opening of business on the date of mailing of this notice is the record time and date for the determination of shareholders entitled to notice of and to vote at the special meeting.

By order of:

Doan Associates, Doan Resources Corporation, and Ian R. N. Bund, holders of the right to vote more than one-fifth of all of the out-standing shares of the Corporation

Dated: <u>January 28, 1982</u>

By: —————————————
Ian R. N. Bund,
Authorized Representative
110 East Grove Street
Midland, Michigan 48640

24. Despite its efforts, Doan has been unable to obtain from AFS or any employee or agent of AFS a complete and accurate list containing the names and mailing addresses of the current shareholders of AFS. Doan, therefore, was required to compile its own AFS mailing list. It began with the AFS shareholder list dated June 1, 1981, and attempted to put addresses to that list.

25. Utilizing its self-compiled mailing list, Doan mailed the notice of special shareholders meeting to the AFS shareholders.

26. On January 28, 1982, Doan sent its self-compiled list of names and addresses to Davis and Croup and demanded that Davis and Croup, as Secretary of AFS, advise Doan of any errors in the list. Doan also sent twenty-four notices, for which it had been unable to find addresses, in c/o AFS, 8050 Castleway Drive, Indianapolis, Indiana, and requested that they be forwarded to the respective shareholders. Croup and Davis refused to advise Doan of any errors in its list and also refused to forward the twenty-four notices sent in c/o AFS. Instead, Croup returned them to Doan. Those twenty-four shareholders did not, therefore, receive notice of the special meeting.

27. Article IV, Section 8 of the By-Laws of AFS provides: "The Secretary shall . . . (b) see that all notices are duly given in accordance with these by-laws or as required by law . . . ." Croup did not abide by the above provision.

28. Ruben became a shareholder of AFS sometime after June 1, 1981. His name, therefore, does not appear on Doan's list of shareholders. Ruben did not receive notice of the special shareholders meeting.

29. Ruben's wife, although a shareholder of record as of June 1, 1981, did not receive notice of the special shareholders meeting to be held on February 19, 1982.

30. Strawn, whose notice was sent to AFS, did not receive notice of the special shareholders meeting.

31. On February 8, 1982, Croup sent a letter to the shareholders of AFS informing them that there would be no special shareholders meeting on February 19, 1982, because the meeting was improperly noticed. Croup sent this letter to the names and addresses appearing on Doan's mailing list.

32. On February 19, 1982, a special meeting of the shareholders of AFS was held in Chicago, Illinois. The meeting was held in the office of Paul A. Gold, attorney-at-law. Mr. Gold has served as the resident agent of AFS since the company was founded in 1971; his office has served as the principal office of AFS in the State of Illinois since that time.

33. Article II, Section 3 of the By-Laws of AFS provides that a special meeting called by persons other than the board or directors shall be held at the "registered office of the corporation in the State of Illinois . . . ."

34. Mr. Gold's office is located at 33 North Delaware Street, Chicago, Illinois—a multi-story office building. The building directory contains no reference to AFS. For one-half hour prior to the meeting Doan caused a sign listing the number of the room in which the meeting was to be held to be hand-held in the lobby of the building by an employee of DRC. The guard at the information desk was advised that if anyone inquired about the AFS meeting the guard was to relay the number of the room in which the meeting was to be held.

35. Three individuals attended the meeting on February 19, 1982. Those individuals were: Morton E. Weldy, attorney for DRC; Richard J. Brandewie, an employee of DRC; and Ian R. N. Bund. Bund was the only "shareholder" who attended the meeting. Bund attended as the agent of Doan and as holder of the proxies discussed earlier.

36. At the meeting Bund voted 241,975 shares held by DRC and 505,070 shares of Davis, Croup, Boon and AFS Investment Corp. (The court notes that the summary of the February 19, 1982, shareholders meeting [Debtor's Ex. L–1) indicates that 629,070 shares were voted by proxy. Since, however, the proxies entered into evidence represent only 505,070 shares, the court found that the number of shares voted by proxy was 505,070). The total shares voted represents approximately seventy-four percent of the outstanding shares of AFS.

37. The following minutes reflect what occurred at the February 19, 1982, special shareholders meeting:

"A special meeting of the shareholders of Acoustic Fiber Sound Systems, Inc. was held at 10:30 a. m. on February 19, 1982 at the registered office of the corporation located at 33 North Dearborn Street, Chicago, Illinois.

Ian R. N. Bund recited the steps taken to provide requisite notice of the shareholder meeting to the shareholders, also, a quorum was found to be present.

The following motion was thereupon made, seconded and adopted by requisite vote of the shareholders, allowing for cumulative voting in accordance with Article II, section 12 of the By-Laws.

RESOLVED that the following Directors be removed from their position as Directors effective immediately: George W. Boon, Gary Ruben, Marion J. Wingard, Alvin A. Strawn, Stephen R. Davis and Robert E. Croup.

A further motion was then made, seconded and adopted by requisite vote of the shareholders, again with cumulative voting allowed as provided in the By-Laws:

RESOLVED that the following individuals be elected to fill vacancies on the company's Board of Directors, as follows: A. Arnold Butterworth, A. Philip Hanmer, Norman W. Kirschke, Richard J. Brandewie, Lucille I. Person and Nancy T. Sandt.

Thereupon a further motion was made and seconded and adopted as follows:

RESOLVED that Ian R. N. Bund be elected as acting secretary of the corporation for purposes of this shareholder meeting only, and also that Ian R. N. Bund be appointed as Chairman of the Board of the company to act as Chairman at the Board meeting to immediately follow the stockholders' meeting.

There being no further business to be conducted, the meeting was thereupon adjourned."

38. No officer of AFS presided at the February 19, 1982 special shareholders meeting as required by Article IV, sections 5 and 6 of the By-Laws of AFS.

39. At the February 19, 1982 shareholders meeting all motions were made by Bund and seconded by Richard Brandewie. Brandewie was not a shareholder of record of AFS as of February 19, 1982, nor was he the holder of any proxies empowering him to vote any shares of AFS.

40. Immediately following the special shareholders meeting a special directors meeting was held via telephone conference call. The following minutes reflect what occurred at that meeting:

"A special meeting of the Board of Directors of Acoustic Fiber Sound Systems, Inc. convened at 33 North Dearborn Street, Chicago, Illinois immediately following the special shareholders' meeting held February 19, 1982. The following persons were present, being all of the Directors of the corporation:

Ian R. N. Bund, James D. Head, A. Philip Hanmer, Norman W. Kirschke, A. Arnold Butterworth, Richard J. Brandewie, Lucille I. Person, and Nancy T. Sandt.

All Directors waived any required notice of the meeting.

The Directors discussed operations of the corporation. Upon motion made and seconded, the following resolutions were unanimously adopted:

RESOLVED that all existing officers of the corporation, specifically including Stephen R. Davis, George W. Boon, and Robert E. Croup be and the same hereby are removed from their officer positions, effective immediately.

RESOLVED that Stephen R. Davis, George W. Boon, and Robert E. Croup be and the same hereby are also removed from any employee status and/or any other status with the company, and that such individuals are to be immediately instructed to depart the company premises and undertake no further activities on behalf of the company whatsoever.

RESOLVED that the following individuals be elected as replacement officers as follows: A. Philip Hanmer—President and Treasurer; Norman W. Kirschke—Vice President, Assistant Treasurer and Secretary; Ian R. N. Bund—Assistant Treasurer and Assistant Secretary.

RESOLVED that Article III, Section 2 of the Corporation By-Laws be amended to provide for three Directors of the corporation.

Directors Kirschke, Butterworth, Brandewie, Person and Sandt then resigned, leaving the corporation with three Directors in accordance with the amended By-Laws, as follows: Ian R. N. Bund, James D. Head and A. Philip Hanmer. Upon motion made and seconded, the following resolution was unanimously adopted:

RESOLVED that the resignations of Norman W. Kirschke, A. Arnold Butterworth, Richard J. Brandewie, Lucille I. Person, and Nancy T. Sandt be accepted.

Discussion of the condition of the corporation then continued among these three Directors and the following resolution was thereupon made, seconded and unanimously adopted:

RESOLVED that the corporation immediately file a Petition for Reorganization under Chapter 11 of the United States Bankruptcy Code; further that any officer of the corporation is authorized to sign appropriate documents as needed on behalf of the corporation in connection with said filing; further that the officers of the corporation are authorized to retain legal counsel for such proceeding and that such legal counsel is also hereby authorized to execute documents as appropriate on behalf of the corporation in connection with the said Chapter 11 proceeding; further that the officers are authorized to close old bank accounts and open new ones (with signatures of at least one of the above-named new officers to be a required signatory on each new account) and take such other actions as are necessary to run the business of the debtor in possession.

There being no further business before the Board, the meeting was adjourned upon motion duly made, seconded and passed unanimously."

41. Thereafter, the instant Chapter 11 Petition was filed on behalf of AFS by the newly elected officers of AFS.

## CONCLUSIONS OF LAW

In response to petitioners' argument that the special shareholders meeting held on February 19, 1982, was invalid because of lack of notice to all shareholders, debtor and Doan maintain that the petitioners are barred from attacking the validity of the special shareholders meeting by the doctrine of equitable estoppel. The thrust of that argument is that the wrongful acts of the petitioners were responsible for the lack of notice to all shareholders. Therefore, they should be barred from using lack of notice as a ground for invalidating the February 19, 1982 meeting.

There are two wrongful acts complained of: first, the refusal of the petitioners to provide Doan with or allow Doan to inspect a current list of AFS shareholders; and second, the refusal of the petitioners to

inform Doan of errors in its list of shareholders and the refusal to deliver notices to AFS shareholders.

As to the first, the debtor and Doan maintain that because of the dire economic condition of AFS in 1981, the proper place for it was in a Chapter 11 proceeding. Therefore, the argument continues, the failure of the petitioners to provide Doan with access to a current list of shareholders—said list being necessary to the eventual filing of a Chapter 11 Petition—was wrongful. In other words, since Doan had a proper purpose in seeking access to the AFS list of shareholders, the petitioners' failure to provide that list was unlawful and bars them from relying on lack of notice as a ground for invalidating the special meeting.

The debtor, Doan and the creditors' committee are in effect asking this court to make the determination that due to the dire economic circumstances of AFS, AFS belongs in a Chapter 11 proceeding, and that the petitioners acted wrongfully in not providing Doan with the means to insure that AFS file a Chapter 11 Petition. This court will not and simply cannot make such a determination. The question of whether the petitioners' conduct of not allowing inspection of the list of shareholders was wrongful cannot be decided by this court. The only question of importance to this court is whether the present directors and officers were lawfully and duly elected, thereby giving them the authority to file the instant Chapter 11 Petition.

■ The determination that AFS should be in a voluntary Chapter 11 proceeding can *only* be made by the duly elected Board of Directors of AFS. Such a determination cannot be made by the court in a voluntary bankruptcy proceeding. Since the petitioners, as officers of AFS, deemed Doan's purpose for inspection of the list of shareholders improper, this court will not disturb that decision.

As discussed earlier, Doan and Bund filed actions in the Marion County Superior Court for the purpose of obtaining access to the AFS list of shareholders. That matter, which involves the issues of whether Doan had a proper purpose and whether the petitioners acted wrongfully, should have been resolved in that forum before any attempt was made to file a Chapter 11 Petition in this court.

■ Since the court will not and cannot determine whether AFS belongs in Chapter 11, the court will not be able to determine whether the petitioners acted wrongfully in not allowing Doan to have access to a current AFS list of shareholders. Accordingly, the court concludes that the doctrine of equitable estoppel does not apply to the petitioners to bar them from objecting to the special shareholders meeting because of lack of notice.

The court notes that even if it were able to make the determination that it was wrongful to withhold access of the list of shareholders from Doan and the court so held, such wrongful conduct would not automatically serve to bar all the petitioners from objecting to the validity of the special meeting. As discussed earlier, Doan requested access to the list of shareholders only from two of the six petitioners—to-wit: Davis and Croup. The wrongful conduct of Davis and Croup could not be attributed to the remaining four petitioners. Equitable estoppel would, therefore, only apply to Davis and Croup.

■ As to the second wrongful act complained of, the court notes that Davis, in his capacity as President, and Croup, in his capacity as Secretary, were the only directors Doan requested to provide assistance in giving notice to AFS shareholders of the special shareholders meeting called by Doan. As noted earlier, Doan held at least twenty per cent of the shares of AFS and is therefore allowed under Illinois law and the By-Laws of AFS to call a special shareholders meeting. Croup, as Secretary, is bound to give notice of a special shareholders meeting. *See* Article IV, Section 8 of the By-Laws of AFS. The duty to send notice does not appear to be discretionary as does the duty to provide access to a shareholder list. There exists no provisions in applicable Illinois corporate law or in the

by-laws which requires a "proper purpose" for the calling of a special shareholders meeting by a twenty per cent shareholder. Accordingly, Croup's refusal to assist Doan in giving notice to AFS shareholders was wrongful. As a result, Croup is barred by the doctrine of equitable estoppel from objecting to the special shareholders meeting because of lack of notice to all shareholders.

The court also concludes that Davis is similarly barred since he also refused to comply with Doan's request for assistance and since Davis, as President, did not insure that the Secretary of AFS fulfill all duties required of him under the by-laws. The court, however, sees no reason to conclude that the remaining four petitioners, Ruben, Strawn, Wingard and Boon, are barred from objecting to the special shareholders meeting. They, unlike Davis and Croup, were not responsible for the lack of notice since they were not requested by Doan to assist in giving notice; nor did they have a duty under the by-laws to provide notice.

 As noted earlier, AFS is an Illinois corporation. As such it is governed by and must comply with Illinois corporate law. Ill.Ann.Stat. Ch. 32, § 157.27 (Smith-Hurd Supp. 1981) provides in part:

> "[W]ritten . . . notice stating the place, day and hour of the [shareholders] meeting . . . shall be delivered not less than ten nor more than forty days before the date of the meeting . . . to *each shareholder* of record entitled to vote at the meeting." (Emphasis supplied.)

The same requirement is also contained in Article II, Section 4 of the By-Laws of AFS.

The language of the above statute and of the by-laws is clear. Notice of a special shareholders meeting must be given to all shareholders. Failure to comply with the notice requirement renders the meeting and all actions taken at that meeting void and of no effect. *See: Darvin v. Belmont Ind. Inc.*, 40 Mich.App. 672, 199 N.W.2d 542 (1972); *People v. Matthiessen*, 269 Ill. 499, 109 N.E. 1056 (1915); and *Charter Gas Engine Co. v. Charter*, 47 Ill.App. 36 (1893).

As discussed earlier, Ruben, Strawn and at least twenty-five other shareholders did not receive notice of the special shareholders meeting held on February 19, 1982. This court concludes that said meeting was improperly and unlawfully held due to the lack of notice to all shareholders as required by Illinois corporate law and by the By-Laws of AFS. All actions taken at that meeting and at the subsequent special directors meeting are void and of no effect. The court further concludes that since the officers who filed the instant Chapter 11 Petition were not the duly elected officers of AFS, the instant petition should be dismissed.

It is therefore ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss is hereby GRANTED.