RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0044p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

GWYN R. HARTMAN REVOCABLE LIVING TRUST
U/A/D 11/16/93,

*Plaintiff-Appellant*,

*v.*

SOUTHERN MICHIGAN BANCORP, INC. and JOHN H.
CASTLE,

*Defendants-Appellees*.

No. 14-1866

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:13-cv-00825—Janet T. Neff, District Judge.

Argued: March 3, 2015

Decided and Filed: March 13, 2015

Before: CLAY, GILMAN, and SUTTON, Circuit Judges.

---

## COUNSEL

**ARGUED:** James W. Rose, JAFFE RAITT HEUER & WEISS, PC, Southfield, Michigan, for Appellant. Madelaine C. Lane, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** James W. Rose, R. Christopher Cataldo, JAFFE RAITT HEUER & WEISS, PC, Southfield, Michigan, for Appellant. Madelaine C. Lane, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellees.

---

## OPINION

---

SUTTON, Circuit Judge. Whenever a Michigan corporation holds a shareholder meeting, it must disclose any proposals on the agenda that a shareholder wishes to submit for

shareholder action.   In 2012, one of Southern Michigan Bancorp's shareholders asked the company to circulate such a proposal before the company's 2013 annual meeting.   In its proxy statement discussing the agenda for the meeting, Bancorp neither distributed the proposal nor described it.   After the proposal was voted down at the meeting, the shareholder sued Bancorp and the chairman of its board of directors for violating their statutory and common-law disclosure obligations.   A federal district court dismissed the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   Because Michigan law required Bancorp to say more than it did, we reverse the judgment of the district court and remand for further proceedings.

Bancorp's bylaws do not permit the corporation to claw back fees paid to directors found liable for breaching their fiduciary duties.   In 2012, the Gwyn R. Hartman Revocable Living Trust, a Bancorp shareholder, drafted a one-paragraph resolution exhorting Bancorp's board to fill that gap.   It asked the board to include the resolution in Bancorp's proxy statement for the upcoming annual meeting along with a two-paragraph "supporting statement" invoking the need for more "director accountability."   R. 25-2 at 2–3.

The board refused.   Its March 2013 proxy statement told shareholders merely that a shareholder planned to propose a resolution urging the board to amend the company's bylaws.   If that resolution materialized, the statement continued, the directors would use their "discretionary authority" to vote it down by treating all submitted proxies as no-votes absent instructions to the contrary.   R. 24 at 2.   The statement said nothing else about the proposal or its substance.

When the annual meeting convened a month or so later, the trust's representative objected to the sufficiency of the disclosure, and objected again when the proposal came up for a vote.   The vote did not go the trust's way.   Just  150,000 shares favored the proposal, and more than 1.7 million shares opposed it.

The trust sued Bancorp and John H. Castle, the company's chairman and CEO, for "intentional[ly] withholding" its proposal from the proxy statement and for "denying" the trust "any meaningful opportunity to solicit votes."   R. 4 at 9.   It also filed a derivative claim on behalf of Bancorp itself.   The district court dismissed the complaint for failing to state a claim on which relief could be granted.

Did Bancorp's notice of the trust's proposal—"a shareholder intends to present for action at the annual meeting a proposal urging the Board of Directors to adopt an amendment to the Company's Bylaws"—satisfy Michigan law? *Notice of Annual Meeting of Shareholders*, S. Mich. Bancorp, Inc. (Mar. 28, 2013), http://www.sec.gov/Archives/edgar/data/703699 /000119312513130714/d444453dex992.htm. We think not.

The relevant Michigan statute requires companies to give shareholders "written notice of the time, place if any, and purposes" of any upcoming meeting. Mich. Comp. Laws § 450.1404. "[N]otice of the purposes of a meeting," the statute continues, "shall include notice of shareholder proposals" that a shareholder intends to submit for a vote. *Id.* We are hard-pressed to understand how mere acknowledgement of the existence of a proposal—without describing even its subject matter—amounts to "notice" under the statute. By Bancorp's lights, "notice of a shareholder proposal" requires only a statement that there will be a shareholder proposal. By our lights, that is not "notice."

Michigan case law suggests as much. In the context of construing the statute's predecessor, which addressed "special" meetings as opposed to regular ones, 3 *The Compiled Laws of Michigan 1948* § 450.39, at 9090 (1948), the Michigan courts have not looked kindly on bare-bones disclosures of this ilk. In *Bourne v. Sanford*, 41 N.W.2d 515 (Mich. 1950), the directors tried to convene a board meeting to dissolve a company without letting its only shareholder know. That was impermissible, the Court held: "We can hardly conceive of an occasion when it is more vital to have a meeting at which there could be a general discussion, interchange of views and consultation of the directors." *Id.* at 521–22. Had the shareholder been properly notified, he could have prepared for the meeting, made his case, and perhaps changed the outcome. *Id.* at 522. A state appellate court later reached a similar conclusion in *Darvin v. Belmont Industries, Inc.*, 199 N.W.2d 542 (Mich. Ct. App. 1972). It concluded that Michigan's "purpose-notice" requirement is designed to help shareholders "study [a] proposal, arrive at a position, and either oppose it or support it" before the meeting itself. *Id.* at 546.

Bancorp's notice did not satisfy these requirements. Its proxy statement said merely that a shareholder intended to submit a resolution calling upon the board to amend the company's bylaws. But it never specified *which* bylaw or *what* topic the bylaw covered. With such skeletal

"disclosure" in hand, a shareholder would never know whether the resolution sought to change the bylaws' record-date procedure or their compensation-committee guidelines or their indemnification rules or their amendment restrictions or their discussion of director liability. *Cf. Horbal v. St. John's Greek Catholic Church of Detroit*, 244 N.W. 493, 495 (Mich. 1932) (holding that an ecclesiastical corporation violated an analogous requirement by mortgaging its property at a special meeting that its notice described only as involving a "very important" matter, full stop).

Other States have endorsed the principles set forth in *Bourne* and *Darvin*. Some States have built them into the four corners of a statute. California's Corporations Code, for instance, requires disclosure of the "general nature of the business to be transacted" at special meetings, and of "those matters that the board . . . intends to present for action by the shareholders" at general meetings. Cal. Corp. Code § 601(a). Other States have derived them from common law. Delaware's General Corporation Law requires a company to give shareholders a summary of only a few types of proposed action. *See* Del. Code Ann. tit. 8, § 242(b)(1). Its courts, however, have plugged the gaps in that regime with a broader duty of disclosure. *See Stroud v. Grace*, 606 A.2d 75, 85–88 (Del. 1992). These endorsements make clear that, at a minimum, a meeting notice "should sufficiently apprise [shareholders] of matters to be considered at the meeting, give them information upon which they may exercise intelligent judgment with reference to the proposed questions, and open up avenues for obtaining additional information." 5 Fletcher Cyclopedia of the Law of Corporations § 2008 (2014).

Because Bancorp did not fulfill its statutory obligation to give "notice of shareholder proposals," the district court erred by dismissing the trust's claim. And because we base our conclusion solely on our interpretation of Michigan law, we leave for another panel and another day the two trickier questions the trust presents: whether Michigan law incorporates Delaware's even more expansive duty of disclosure and whether Bancorp violated *that* duty too.

Bancorp's rejoinders miss the target. It claims that our interpretation of Michigan law "rewrite[s]" § 450.1404 to "require submission of a shareholder's proposal with a corporation's proxy materials." Appellee's Br. at 17. Not true. Michigan does not force companies to hand shareholders the pen when drafting a meeting notice. But the fact that Michigan does not

replicate the SEC's maximal proxy-access regime does not obviate the statute's own requirements, which set a minimum disclosure floor.

Bancorp persists that, because *Bourne* and *Darvin* involve an older version of § 450.1404, neither case deserves our allegiance. Also not true. Before § 450.1404 took effect, companies had to disclose the purposes of only special shareholder meetings, not regular ones. Even then, *Darvin* cited approvingly, if in dictum, a treatise arguing that the purpose requirement be extended to "any extraordinary matter" up for discussion "at a regular [shareholder] meeting" too. *Darvin*, 199 N.W.2d at 546 (citing Norman D. Lattin, *The Law of Corporations* 286 (1st ed. 1959)). Michigan eventually accepted the treatise's invitation, and in fact went further. The notice requirement now applies to *all* shareholder meetings, special or regular, and to *all* a meeting's purposes, extraordinary or not. The new statute simply extends the notice requirements of the old one—as expressed in *Bourne* and *Darvin*—to many more shareholder communications, including the notice at issue in this case. *Bourne* and *Darvin* control our interpretation of § 450.1404 unless and until the Michigan courts say otherwise.

One last point. Is the trust's claim direct, derivative, or both? The district court did not say because it determined that the claim itself lacked merit. Having concluded otherwise, we leave the issue for the district court to decide in the first instance.

For these reasons, we reverse the district court's judgment and remand for further proceedings.